Daniel Sheckler
SHECKLER LAW OFFICE, PLLC
Shecklerlawofficeservice@gmail.com
ISB#7773
500 N. Government Way, Ste. 600
Coeur d'Alene, Idaho 83814
Ph.  (208) 292-4649
Fax (208) 292-4632

Attorney for Plaintiff

UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF IDAHO

-------------------------------------------------------------------------------------------------------------

| | |
|---|---|
| RICHARD STEVEN CRAMER | ) Case No. 2:24-CV-408 |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| vs. | ) |
| | ) **COMPLAINT** |
| | ) |
| BENJAMIN LUKE OMODT, in his individual capacity, STEVEN RAYFORD BRADSHAW, in his individual capacity, and, BONNER COUNTY, a body corporate and politic in the State of Idaho. | ) **DEMAND FOR JURY TRIAL** |
| | ) |
| *Defendants.* | ) |

-------------------------------------------------------------------------------------------------------------

COMES NOW, the above-named plaintiff by and through his attorney of record,

Daniel K. Sheckler, and for a cause of action alleges and complains as follows:

### I.    Jurisdiction

1. This Court has personal jurisdiction over Defendants because they have

   minimum contacts with the State of Idaho.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1343 as this claim seeks to recover

   damages or to secure equitable or other relief under any Act of Congress providing for the

   protection of civil rights.

**COMPLAINT**                                                                                    **PAGE: 1**

3.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 by virtue of its authority to hear federal questions, including claims related to deprivation of constitutional rights under color of state law.

4.  This Court has supplemental jurisdiction to hear Plaintiff's claims based in state law because they are so related as to form part of the same case or controversy pursuant to 28 U.S.C. § 1367(a).

5.  Venue is proper in the District of Idaho pursuant to 28 U.S.C. 1391(a)(2) because the events giving rise to the claim took place in Idaho.

6.  The acts complained of herein substantially occurred at the Bonner County Administration Building at 1500 US-2, Sandpoint, ID 83864, or substantially otherwise in Idaho.

7.  On or about February 26, 2024, Richard Steven Cramer, through his attorney and/or authorized agents, duly presented to Bonner County Clerk Michael Rosedale for filing his Notice of Tort Claim pursuant to the Idaho Tort Claims Act.

8.  A true and correct copy of the aforesaid Notice of Tort Claim that was duly presented to Bonner County Clerk Michael Rosedale for filing on or about February 26, 2024 is attached hereto as Exhibit 1.

9.  On or about May 2, 2024, Richard Cramer, through his attorney and/or authorized agents, duly presented to Bonner County Clerk Michael Rosedale for filing his Supplemental Notice of Tort Claim pursuant to the Idaho Tort Claims Act.

10. A true and correct copy of the aforesaid Supplemental Notice of Tort Claim that was duly presented to Bonner County Clerk Michael Rosedale for filing on or about May 2, 2024 is attached hereto as Exhibit 2.

**II.    Parties**

11. Plaintiff is Richard Steven Cramer, a resident of Bonner County, State of Idaho.

**COMPLAINT**                                                                                    **PAGE: 2**

12. Benjamin Luke Omodt is an elected commissioner of Bonner County.

13. Omodt is the chairman of the Bonner County Board of County Commissioners.

14. At all relevant times, Omodt was and is a person acting under color of state law for purposes of 42 U.S.C. § 1983.

15. Omodt is sued in his personal capacity.

16. Steven Rayford Bradshaw is an elected commissioner of Bonner County.

17. Bradshaw previously served as Chairman of the Board of County Commissioners (BOCC) at some points in time during the year 2023.

18. Bradshaw is sued in his personal capacity.

19. At all relevant times, Bradshaw was and is a person acting under color of state law for purposes of 42 U.S.C. § 1983.

20. Bonner County is a body politic and corporate in the State of Idaho.

21. At all relevant times, Bonner County was and is a person acting under color of state law for purposes of 42 U.S.C. § 1983. See *Miranda v. Clark County*, *Nev.,* 319 F.3d 465, 469 (9th Cir. 2003) (*en banc*).

22. Bonner County is liable for the policy and custom of Bonner County created by its governing officials including Benjamin Luke Omodt and Steven Bradshaw.

23. A majority of the Board of County Commissioners has final decision-making authority for Bonner County.

24. The Board of County Commissioners for Bonner County had three members: Asia Williams, Omodt, and Bradshaw at all material times complained of herein.

25. A majority of the Board of County Commissioners is formed with two votes.

26. A majority of the Board of County Commissioners ratified various actions of Omodt, making such actions of Omodt the official policy of Bonner County for purposes of municipal liability.

27. Bonner County failed to adequately train Omodt on respecting the First Amendment rights of Cramer.

28. Bonner County failed to adequately train the BOCC on civil rights, including but not limited to training regarding respecting the First Amendment rights, Fourth Amendment rights, and due process rights of its citizens, including Cramer.

### III.    Facts

29. All facts alleged herein occurred after January 1, 2023.

30. The Bonner County Administration Building is the site of the meetings of the Board of County Commissioners ("BOCC") and is located at 1500 US-2, Sandpoint, ID 83864.

31. The BOCC holds regular and special meetings to conduct the business of Bonner County.

32. "Because the people of the state of Idaho in creating the instruments of government that serve them, do not yield their sovereignty to the agencies so created," the Legislature found and declared that it is the policy of the state of Idaho that the formation of public policy is public business and shall not be conducted in secret.  *See* Idaho Code 74-201.

33. The Idaho Open Meeting Law generally requires the Regular and Special Meetings of the BOCC to be open to the public, and that all persons shall be permitted to attend any meeting except as otherwise provided by the act.  *See* Idaho Code 74-203(1).

34. Bonner County adopted an ordinance "for the purpose of establishing a regular meeting schedule for the Bonner County board of commissioners in order that board activities can be carried out with greater public participation and awareness." Bonner County Revised Code § 1-200.

35. Bonner County's public meeting ordinance provides that "…at the discretion of the chair, everyone may be afforded an opportunity to speak on a particular issue, if recognized by the chair. Any unrecognized comments or disruptive behavior will be grounds for removal from the board meeting by the chair and may subject the person being removed to criminal prosecution according to law." Bonner County Revised Code § 1-200(A).

36. The ordinance further provides for a public comment period "…to enable citizens with issues or concerns which they wish to bring to the board's attention and afford an opportunity for consideration on a future agenda for possible board action." *See* Bonner County Revised Code § 1-200(B).

37. Cramer owns real property in Bonner County.

38. Cramer regularly pays property taxes funding in part the operations of Bonner County government.

39. Cramer is a resident of Bonner County, Idaho who is affected by the decisions of the BOCC.

40. As a taxpayer and resident, Cramer is interested in the functioning of Bonner County government and the decisions of the BOCC.

41. He frequently attends public meetings of the BOCC and often provides comments at the meetings.

42. His comments are germane to the issues before the BOCC.

43. The meetings of the BOCC are chaired by the chairman of the BOCC.

44. The chairman of the BOCC, as further alleged herein, did not properly preside over the BOCC meetings and did not properly apply Roberts Rules of Order, nor did the chairman uniformly apply uniform standards of decorum.

45. From time-to-time the BOCC meetings were hotly debated and issues were passionately discussed.

46. From time-to-time Omodt and Bradshaw believed that the citizens attending the meeting were rancorous or disruptive to the functioning of the meeting.

47. In the Spring of 2023 Bradshaw and/or Omodt sought input for how to limit public debate and trespass citizens who they deemed were disruptive to the meetings of the BOCC.

48. In internal communications, Omodt and/or Bradshaw referred to citizens they deemed disruptive as "the mob."

49. Fair and accurate video and audio depictions of the meetings of the BOCC are available at the BOCC's YouTube channel.  The link is:

   https://www.youtube.com/channel/UCsFUpuVj8VtuATY4eAD7e4Q

50. From January 1, 2023 to November 15, 2023 Cramer attended several meetings of the BOCC.

51. At many of the BOCC meetings that he attended, Cramer did not make any public comment.

52. Cramer occasionally made public comments at meetings of the BOCC.

53. Cramer did not disrupt any meetings from January 1, 2023 to November 15, 2023, at all.

54. On or about March 13, 2023, Prosecuting Attorney Louis Marshall sent the BOCC a Memorandum cautioning the BOCC not to trespass citizens from regular business meetings of the BOCC.

55. An authentic, and true and correct copy of the Memorandum is attached hereto as Exhibit 3.

56. Despite having such legal advice, Omodt sought to lump persons who had disrupted meetings in with violent people, in an attempt to get legal sanction to wrongfully trespass citizens from public meetings, or shut down public comment.

57. The then-Chair Bradshaw and then-Commissioner Omodt said the meetings have gotten out of control, with constant outbursts making it difficult to conduct county business.

58. "For months, we have been having unrecognized comments and disruptive behavior to such a degree that our meetings are toxic and embarrassments," Omodt said.

59. At the June 27, 2023 meeting the BOCC acting through its then-Chairman, Bradshaw, suspended all public comments from public meetings of the BOCC.

60. No ordinance was passed amending Bonner County Revised Code § 1-200, either reasonably before, during, or after the June 27, 2023 meeting of the BOCC.

61. Members of the BOCC Omodt and Bradshaw lumped citizens who attended and commented at the meetings together, and referred to them as the "crowd" or the "mob" in their written correspondence.

62. During the summer of 2023, Chair Bradshaw and Commissioner Luke Omodt told a reporter that meetings have gotten out of control, with constant outbursts making it difficult to conduct county business.

63. During the summer of 2023, Omodt told a reporter that "For months, we have been having unrecognized comments and disruptive behavior to such a degree that our meetings are toxic and embarrassments."

64. Shortly after the June 27, 2023 meeting, a citizen confronted Bradshaw as the man who "silenced the public" and is now "running away from the meeting."

65.  Bradshaw then approached the citizen.  Bradshaw told the citizen "Does it look like I'm running from somebody, you chickenshit sonofabitch?" Bradshaw asked, before calling the

**COMPLAINT**                                                                                              **PAGE: 7**

citizen a "fucking loud mouth and a coward."

66. On or about June 27, 2023 Omodt told a reporter for the Sandpoint *Reader* in a phone interview following the June 27 meeting that the public comment shutdown was in response to "a complete breakdown in regards to decorum," amounting to physical threats he has received against himself and his family. He also cited a recent incident involving a meeting attendee who called Bradshaw a "motherfucker." "We have been continually accused of being liars and thieves and accepting bribes," Omodt said, before adding: "We want the public to be involved, but what do we do when people are threatening our families? It's not something I will tolerate."

67. On or about June 27, 2023, Cramer did not make any physical threats against Omodt or his family.

68. On or about June 27, 2023, Cramer did not call Bradshaw a "motherfucker."

69. On or about June 27, 2023 Cramer did not accuse Omodt or Bradshaw of being liars and thieves and accepting bribes.

70. On July 10, 2023 at 4:32 p.m. Omodt sent an email to Louis Marshall, the Bonner County Prosecuting Attorney.

71. A fair and accurate copy of the aforesaid email is attached hereto as Exhibit 4.

72. In the aforesaid email, Omodt alleges that "[t]he disruptive behavior at our business meetings has created an environment where employees do not want to attend or participate. The implied threats, bullying and harassment are frequent."

73. Marshall responds in an email on July 10, 2023 at 4:55 pm, a fair and accurate copy of which is attached hereto as Exhibit 5.

74. In the aforesaid email, Marshall informs Omodt that if there were any explicit threats he would have to handle that with a different process.

**COMPLAINT**                                                                                    **PAGE: 8**

75. The suspension of public comment was an attempt to curtail the freedom of expression of the citizens of Bonner County.

76. On or about July 25, 2023 then-Chair Bradshaw began taking limited public comment at BOCC meetings.

77. No person was ever convicted of a crime for threatening behavior at a BOCC meeting in 2023 or 2024.

78.  However, Bradshaw made comments to a third-party that threatened Commissioner Williams.

79. On or about August 30, 2023 a Court hearing was held in the First Judicial District Court for the State of Idaho, in and for the County of Bonner Case No. CV09-23-1275.

80. At that hearing Steven Bradshaw was present, represented by counsel.

81. Following the Court hearing, wherein Steven Bradshaw was present, Idaho First Judicial District Magistrate Judge Justin Julien issued a Civil Protection Order protecting Bonner County Commissioner Asia Williams from Bradshaw based in part upon the aforesaid comments Bradshaw made to a third-party that threatened Commissioner Williams.

82. A true and correct copy of the Civil Protection Order is attached hereto as Exhibit 6.

83. The Civil Protection Order was issued because of the threats made by Bradshaw to harm Commissioner Asia Willliams.

84. The aforesaid Civil Protection Order was not appealed within 42 days.

85. Bradshaw had a full and fair opportunity to litigate the allegations made by Williams at the hearing before the aforesaid Civil Protection Order was issued.

86. Despite having made threats against Commissioner Williams, Bradshaw was allowed to continue to attend meetings of the BOCC.

**COMPLAINT**                                                                                   **PAGE: 9**

87.  On or about October 9, 2023, Omodt was elected Chairman of the BOCC, replacing Bradshaw as Chairman.

88. Cramer attended the November 16, 2023 BOCC meeting.

89. At the November 16, 2023 meeting of the BOCC, there was a discussion about taxpayer dollars for the assignment of a protection detail to protect Commissioner Williams from Commissioner Bradshaw's adjudicated unlawful threats.

90. At the November 16, 2023 meeting of the BOCC, Chairman Omodt was explaining how he thought he should have access to records about the deputies assigned to monitor the commissioners in executive session.

91. At that time, the deputy or deputies were assigned to attend the BOCC meetings for Commissioner Wiliams' safety, and to inspect Bradshaw for firearms pursuant to the Bonner County Court's aforesaid Civil Protection Order.

92. Cramer had compassion and empathy for a woman, Williams, who was the victim of violent threats by Bradshaw.

93. During Omodt's discussion of the deputy's presence, Cramer got up out of his chair to leave the November 16, 2023 meeting of the BOCC. While he left the meeting, he commented: "you know what Luke, the reason that Deputy is here is because he [Bradshaw] threatened to shoot her [Williams].…"

94. Cramer then announced he was leaving. He then walked out. A deputy walked out near him, but he was already on his way out.

95. The Deputy did not touch Cramer to escort him out.

96. The Deputy did not request that Cramer leave.

97. The Deputy did not order Cramer to leave.

98. His comment lasted approximately 12 seconds.  It did not significantly disrupt the meeting such that the BOCC was prevented from carrying out its duties at the meeting.

99. Indeed, just 21 seconds after the comment began, debate had resumed and the meeting proceeded.

100. Thereafter, Cramer continued to attend meetings of the BOCC from November 16, 2023 until January 26, 2024.

101. On or about January 12, 2024 Omodt was serving as the Legislative Representative for the Idaho Association of Counties.

102. On or about January 12, 2024, Cramer sent a letter to the Idaho Association of Counties, a fair and accurate copy of which is attached hereto as Exhibit 7.

103. In the aforesaid letter, Cramer sought the removal of Omodt from being the Legislative Representative for the Idaho Association of Counties.

104. Omodt had personal knowledge of the aforesaid letter that was very critical of Omodt.

105. On January 15, 2024 at 8:16 am, Dave Bowman sent an email to Bonner County Director of Emergency Management and Solid Waste Bob Howard, Prosecutor Louis Marshall, Sheriff Wheeler, and the members of the BOCC including Omodt and Bradshaw.  A fair and accurate copy of the email is attached hereto as Exhibit 8.

106. The email notified county officials that they could not remove people from public meetings for speech they did not like when they were not being disruptive.

107. Prosecutor Louis Marshall was cc'd to "weigh-in" on Bowman's email.

108. The email warned county officials of the civil liability for wrongfully removing citizens from public meetings.

109. On January 15, 2024 at 4:44 pm, Omodt sent an email to Bob Howard and Dave Bowman that said "Director Howard, Please come and speak with the BOCC before providing any

type of response.  Bowman has threatened Bonner County with a lawsuit and he can speak to our counsel."

110. On January 15, 2024 at 5:20 pm Dave Bowman responds to the aforesaid email stating "I threatened nothing."

111. On January 16, 2024 meeting of the BOCC, Bonner County Clerk Michael Rosedale gave a report about a potential audit of the fair board.

112.  At the conclusion of Rosedale's speech, while remaining seated, Cramer raised his hand and said: "I have a question for Rosedale."

113. Omodt refused to recognize Cramer, stating that "the Chair is not entertaining comments from the public at this time."

114. Cramer than remained quiet, and the meeting proceeded.

115. Commissioner Williams than stated that she would be reaching out to inquire of Cramer, stating that the County Ordinance permits that.

116. Omodt then immediately ruled her out of order.

117. Omodt then recessed the meeting.

118. During this time, Cramer remained quiet and seated.

119. At the January 16 meeting, a citizen, Dan Rose, gave a public comment about his perspective of the right of the people under Art. 1 Section 10 of the Idaho Constitution to "instruct their representatives."

120. Rose argued that Omodt's limitations on public comment and participation violated that provision of the Idaho Constitution.

121. Rose then stated the Chair is not a supporter of Article 1 Section 10 and that "the Chair has sworn oath to God, family, and country which is absolutely false to the chair's oath---".

**COMPLAINT**                                                                                         **PAGE: 12**

122. Rose was then interrupted by Omodt before his time had expired, who called the statement derogatory for calling Omodt a "liar" and informed him that his comments were up for the day.

123. Rose continued his comment after Omodt's interruption and said "The chair's oath was to the U.S. Constitution, the Idaho Constitution, and the laws of the state of Idaho."

124. Rose continued beyond his three minutes, albeit three interrupted minutes and said "Suspending public comment is a direct confrontation to instructing your representatives."

125. Omodt requested a county employee, Lacomb, to ask Rose to either sit or exit the building.

126. Bradshaw stated that if Rose does not leave to call Sandpoint Police.

127. Rose stated that "I have not violated anybody. I have not made a derogatory comment."

128. Omodt informed Rose that he was failing to follow the directions of the Chair.

129. Rose responded that "The Chair is not king."

130. Omodt requested Bonner County Sheriff Deputy Lt. Riffel to assist in maintaining peace.

131. Lt. Riffel did not make an arrest or otherwise assist.

132. Omodt stated that we do not need to call Sandpoint police.

133. Rose sat down.

134. The incident on January 16, 2024 was nonviolent.

135. No crime of assault occurred at the January 16, 2024 meeting of the BOCC.

136. No crime of battery occurred at the January 16, 2024 meeting of the BOCC.

137. No crime of disturbing the peace occurred at the January 16, 2024 meeting of the BOCC.

138. Yet on January 20, 2024 at 6:19 PM Omodt sent an email to Sheriff Daryl Wheeler a true and correct copy of which is attached hereto as Exhibit 9.

139. In the email, Omodt sarcastically complains that Sheriff Wheeler was not keeping the County Administration safe.

140. In the aforesaid email, Omodt complains that Lt. Riffel did not "maintain the peace" at the January 16, 2024 meeting.

141. At the January 23, 2024 meeting of the BOCC, Commissioner Asia Williams  placed several items on the agenda.  A true and correct copy of the agenda is attached hereto as Exhibit 10.

142. Commissioner Bradshaw made a motion to strike agenda items 1-21.

143.  Commissioner Omodt seconded the motion and the matter was then debated.

144. Commissioner Williams commented that the BOCC was advised by legal not to remove items from the agenda, but Omodt and Bradshaw voted to approve the motion to remove them, anyways.

145. Several members of the public drove to the public meeting to participate in the agendized items.

146. Members of the public reasonably relied upon the agenda that was previously published.

147. Cramer was an attendee at the January 23, 2024 meeting who anticipated getting to hear about the agendized items, and was curious about what would transpire because he valued the information and insights available at Commissioner Williams' chats.

148.  Cramer had signed up for public comment, a true and correct copy of the sign-up sheet is attached hereto as Exhibit 11.

149.  Cramer was unfairly deprived of this opportunity to hear about the agendized items and comment on them by the arbitrary decision of the BOCC to remove the items.

150. Cramer got up to leave the meeting.

151.  After getting up to leave, Cramer objected that the items were "county business" and said effectively "you know what Luke you can throw me out."

152.  Omodt affirmed that he could leave.

**COMPLAINT**                                                                                          **PAGE: 14**

153.  Chairman Omodt began to ask Cramer to leave, but never finished his sentence.

154.  Cramer stopped speaking and his oral statements lasted less than a minute. His statements lasted a mere 19 seconds.

155. Chairman Omodt recessed the meeting and argued with commissioners.

156. Omodt did not make a motion to exclude Cramer from the meeting.

157. Omodt did not actually ask Cramer to leave at this time.

158. Commissioner Williams interjected and invited him to stay.

159. Upon reasonable reliance upon the request of Commissioner Williams, Cramer stayed.

160. Omodt then said I have asked you to leave.

161. Commissioner Williams said it "was a tie."

162. Commissioner Williams' statements and conduct challenged the decision of the Chair in ruling Cramer out-of-order.

163.  Commissioner Bradshaw was silent and did not vote or indicate his preference one way or the other.

164. The BOCC never resolved the issue.

165.  No motion was passed by the BOCC to exclude Cramer.

166.  The BOCC as a whole has control over the County administration building.

167.  Idaho Code § 31-807 gives the authority to the Board as a whole.

168.  Omodt knew or should have known that the Board of County Commissioners control Bonner County public property, not the Chairman acting alone.

169. Cramer was reasonable in relying upon the tie vote of the two commissioners that went unbroken and reasonable to remain on the premises.

170. Omodt did not contact Sheriff Wheeler to remove Cramer from the January 23, 2024 meeting.

**COMPLAINT**                                                                                      **PAGE: 15**

171. Omodt knew such contact would be futile because Sheriff Wheeler has informed Omodt that Bonner County Sheriff deputies would only make arrests if a crime was committed.

172. Omodt contacted the Sandpoint Police during the recess or caused the Sandpoint Police to be contacted.

173. The Sandpoint Police officers arrived, but the police did not require Cramer to leave.

174. The officer told Cramer that he cannot be disruptive, but that he is not going to take action because the BOCC has to figure out their rules.

175. The officer told him "We have one commissioner saying one thing and another commissioner saying another thing."

176. The officer then gestured for him to go back into the meeting and said "if you're in the meeting those rules [not to disrupt] exist."

177. The Sandpoint city police officer did not know how to break the tie vote of the two county commissioners.

178. Cramer was reasonable to return to the meeting.

179. Cramer returned to the January 23, 2024 meeting of the BOCC and did not substantially disrupt the meeting after that incident.

180. Dave Bowman sent an email to Bonner County employee Bob Howard and members of the BOCC, including Omodt and Bradshaw, on January 24, 2024 at 10:22 am, a true and correct copy of which is attached hereto as Exhibit 12.

181. On January 25, 2024 at 12:05 pm, Chairman Omodt sent an email to Bill Wilson telling him that Cramer was to be immediately trespassed, despite there not being any vote of the BOCC at that time to trespass Cramer.  A true and correct copy of the email is attached hereto as Exhibit 13.

182. On January 25, 2024, Chairman Omodt received a letter from Chief Corey Coon of the Sandpoint Police Department. A true and correct copy of which is attached hereto as Exhibit 14.

183. The letter advised that the city will not respond to trespassing complaints due to the lack of procedures with the county and the city's desire to avoid liability.

184. On January 26, 2024 at 8:00 am, Chairman Omodt sent an email to county employees, a true and correct copy of which is attached hereto as Exhibit 15.

185. Exhibit 15 states that Rick Cramer is trespassed from the BOCC, even though no motion was passed by the BOCC to trespass Cramer.

186. Exhibit 15 states that Cramer was twice removed from meetings of the BOCC by law enforcement officers.

187. That statement was false. Cramer was not removed by law enforcement officers twice from BOCC meetings.

188. Additionally, the email implied that the basis for the trespass against Cramer was Bowman's email and Bowman's threats of "lawfare."

189. On or about January 26, 2024 at approximately 9:23 am, Chairman Omodt sent an email from his county email account to Cramer notifying him that he is immediately trespassed from all Bonner County meetings from January 26, 2024 through January 25, 2025.

190. A true and correct copy of the aforesaid email is attached hereto as Exhibit 16.

191. Bonner County does not have an ordinance authorizing the Chairman to trespass individuals from future County meetings.

192. Bonner County Code § 1-200(A) only permits the removal of a person for unrecognized or disruptive comments at that meeting.

**COMPLAINT**                                                                                   **PAGE: 17**

193. The Board of County Commissioners did not pass a motion to trespass Cramer at the time the email notice was sent, or thereafter.

194. Cramer did not immediately know the January 26, 2024 email had been sent.

195. On January 26, 2024, at or about the time the aforesaid email was sent, Cramer was sitting quietly in a chair at the public meeting of the Board of County Commissioners, waiting for Chairman Omodt to call the meeting to order.

196. Cramer did not disrupt the January 26, 2024 meeting in any way.

197. Cramer was quietly seated with a respectful demeanor on January 26, 2024.

198. Thereafter, at the meeting on the morning of January 26, 2024, Chair Omodt called the meeting to order.

199. Omodt noted the absence of Commissioner Williams and then proceeded to immediately ask on the record for Cramer to leave the meeting and notified him that he was immediately trespassed from the County Administration Building for one year.

200. No motion to trespass Cramer was on the Agenda for the January 26, 2024 meeting of the BOCC.

201. No motion to trespass Cramer was made by any member of the BOCC at the January 26, 2024 meeting, or before.

202. Following the oral notice of trespass on January 26, 2024, Cramer remained peaceful.

203. Following the oral notice of trespass on January 26, 2024, Cramer remained quiet.

204. Omodt announced that the meeting was in recess while Sandpoint Police would be contacted.

205. Omodt than charged Cramer with misdemeanor trespassing and arrested Cramer.

206. Omodt signed a citation and placed Cramer under citizen's arrest.

207. Omodt delivered Cramer to the custody of a Sandpoint City Police Officer, who took custody of Cramer.

208. Cramer made no threats of gunfire on or before January 26, 2024, or thereafter.

209. Cramer did not engage in unlawful resistance, obstruction, or violence on January 26, 2024.

210. Cramer peacefully submitted to Omodt's arrest and was peacefully transferred into the custody of the Sandpoint City Police on January 26, 2024.

211. At all times Cramer remained peaceful on January 26, 2024.

212. Omodt did not have probable cause to believe that the trespass notices were lawfully issued.

213. Omodt did not have probable cause to believe Cramer committed a crime.

214. Omodt did not have probable cause to believe that Cramer committed an arrestable offense.

215. Idaho Code 18-7008(3)(a)(i)(1) provides that a trespass is an infraction, a non-jailable offense for which an arrest may not be made, unless the authorized agent of the owner orders the person to depart.

216. At the time Omodt ordered Cramer to leave and made his arrest, Cramer was not given notice to leave the premises by a "person with authority."

217. Omodt knew or should have known that Bonner County did not have a trespass ordinance authorizing the Chair to prohibit citizens from attending future meetings.

218. Bonner County Code § 1-200(A) only permits the chair to remove a person for unrecognized or disruptive comments at that meeting.

219. Omodt knew or should have known that the Board of County Commissioners control Bonner County public property, not the Chairman acting alone.

**COMPLAINT**                                                                 **PAGE: 19**

220. Idaho Code § 31-807 gives the authority to the Board as a whole.

221. Omodt knew or should have known that the Board of County Commissioners had not passed a motion to trespass Cramer at the time he issued the notice of trespass.

222. Omodt knew or should have known that his notice of trespass was made for the unlawful or improper purpose of limiting Cramer's right to assemble, to associate, to speak (both symbolically and literally), and to seek redress of his grievances.

223. Omodt knew or should have known that the trespassing statute was unconstitutional as applied to Cramer's conduct.

224. Omodt knew or should have known that he cannot remove a person from a public meeting who is not being disruptive.

225. Omodt ignored legal advice, and took the aforesaid actions.

226. Omodt acted with malicious intent or with an unlawful or improper purpose to arrest Cramer without probable cause.

227. Omodt gave a similar trespass notice to Dave Bowman, and also placed Dave Bowman under arrest at the January 26, 2024 meeting of the BOCC.

228. Cramer was transported to the jail.

229. Around the time Cramer was transported to the jail, Prosecutor Louis Marshall contacted Sheriff Daryl Wheeler or a deputy and told him not to take Cramer into the jail.

230. The Bonner County Sheriff refused to book Cramer into the jail.

231. Cramer was released without being booked into the jail on January 26, 2024.

232. On or about January 26, 2024, Omodt desired and intended for Cramer to be put in jail.

233. Omodt had malice towards Cramer.

234. On January 27, 2024, the *Bonner County Daily Bee* published an article on the front page of the local newspaper regarding Cramer's arrest.  A fair and accurate copy of the article is attached hereto as Exhibit 17.

235. The *Bonner County Daily Bee* is the newspaper of record in Bonner County and is widely read by many Bonner County Citizens.

236. On January 28, 2024 at 8:26 pm, Omodt sent an email to Prosecutor Louis Marshall, and his deputy prosecutors, Dan Rodriguez and Bill Wilson.  A true and correct copy of the email is attached hereto as Exhibit 18.

237. Omodt expressed that it was very concerning that Rick Cramer was not taken into custody at the jail on January 26, 2024.

238. He referred to members of the public at the BOCC meetings as "the mob."

239. Omodt stated in the email that "[t]hese two men were trespassed for their regular and frequent disorderly conduct and the clear threat of violence issued by Bowman."

240. On or about January 30, 2024, Omodt held a press conference at the County Administration Building regarding having issued the trespass notice and made the arrest of Cramer, as well as Dave Bowman.

241. In response to a question about the "persons" who were recently trespassed, Omodt told the press that the trespass notice was given because of written threats of violence.

242. Omodt implied that Cramer made a threat of violence.

243. Omodt falsely told the media that Cramer refused to leave peacefully.

244. Cramer left peacefully without unlawful obstruction, resistance, or violence, and submitted to the peace officer's taking custody of him following Omodt's declaration of an arrest.  No physical force was ever needed.

245. Omodt falsely stated or implied that Cramer said "no I will not" in response to a question about whether or not he would leave peacefully.

246. Cramer refused to follow Omodt's unlawful demand that he leave; Cramer did not threaten or imply violence.

247. Omodt falsely stated or implied that Cramer said "no, not gonna happen." This was a statement made by David Bowman, not Cramer.

248. Omodt implied that Cramer engaged in unlawful resistance, obstruction or violence by stating that he would not leave peacefully.

249. Omodt stated or implied that Cramer threatened to take offensive action or threaten to shoot someone for doing their job, and was therefore trespassed.

250. Omodt stated or implied that it was permissible for Cramer to have been trespassed, and required to attend public meetings remotely, because he deserves an inconvenience for making written threats of gunfire.

251. On January 30, 2024, a Joint Statement was published on the Bonner County Sheriff's Office Facebook page.    A true and correct copy of the Joint Statement is attached hereto as Exhibit 19.

252. The Joint Statement was published on the Bonner County Sheriff's Office Facebook page with the consent of Prosecutor Louis Marshall.

253. The Joint Statement was published on the Bonner County Sheriff's Office Facebook page with the consent of Sheriff Daryl Wheeler.

254. Louis Marshall and Daryl Wheeler agreed to jointly publish the statement.

255. The Joint Statement related to the arrest of Rick Cramer and to the trespass of Rick Cramer.

256. On January 31, 2024, Bonner County employee Veronica Dixon made a witness statement to the Sandpoint City Police Department.  A true and correct copy of which is attached hereto as Exhibit 20.

257. Bonner County retained a written or electronic copy of the witness statement. This fact is believed to have evidentiary support after a reasonable opportunity for discovery.

258. The witness statement was otherwise accessible as a record of Bonner County. This fact is believed to have evidentiary support after a reasonable opportunity for discovery.

*259.* On or before February 2, 2024, Bradshaw made statements in writing or orally to a person he knew to be a reporter for the *Bonner County Daily Bee.*

260. Bradshaw told the reporter that disturbances were allegedly made by Cramer at the board's January 23, 2024 meeting.

261. Bradshaw said the unrest is causing safety concerns for county staff.

262. Bradshaw said "there has been continued disturbances and disorderly behavior to the point that we have not been able to conduct county business," he said. "This is nothing less than an organized group of insurrectionist[s] that is being orchestrated by the group's leader."

263. Commissioner Bradshaw implied that Cramer engaged in violent and disorderly behavior, amounting to an organized insurrection, and posed a risk of being a mass shooter, violently threatening staff.

264. An insurrection is a violent uprising against an authority or government.

265. Briefly speaking out of turn when not recognized by the Chair does not amount to an insurrection.

266. Remaining quietly seated prior to the start of the meeting was not a disturbance or an insurrection.

**COMPLAINT**                                                                                          **PAGE: 23**

267. Idaho Code § 46-601 permits the Governor to declare an extreme emergency to suppress a violent insurrection.

268. Commissioner Bradshaw said that "with the increase in mass shootings across this nation, we will push this forward to the courts, even if it takes [the Idaho State Police] and the governor's office."

269. Commissioner Bradshaw stated or implied that Cramer was part of an organized conspiracy to violently overthrow the county government such that the governor needed to be called to suppress the insurrection and establish law and order.

270. Commissioner Bradshaw intended his statements to reach a wide audience in Bonner County by making the statements to a reporter for the *Daily Bee* who published an article in the newspaper, a true and correct copy of which is attached hereto as Exhibit 21.

271. Conspiracy to violently overthrow the government is a felony.

272. Following his arrest, Cramer did not attend any meetings of the BOCC in-person until his trespass was lifted on April 4, 2024.

273. Cramer's attendance at Bonner County meetings in-person was chilled by threat of unlawful arrest.

274. Meetings of the BOCC are simultaneously held live and remotely via Zoom.

275. Remote participants can see and hear the Commissioners and members of the public.

276. However, Bonner County does not permit remote participants to display their video.

277. Cramer could not use his video to show his facial expression, clothing, or otherwise provide non-verbal communications at the meetings of the BOCC that he could attend remotely over Zoom.

278. Bonner County had restricted or not enabled the use of participants' video cameras for the Zoom meetings of the BOCC.

**COMPLAINT**                                                                 **PAGE: 24**

279. No participant of meetings of the BOCC could have their video image displayed on the screen.

280. Members of the public, other remote participants and members of the BOCC could not see remote participants at the meetings of the BOCC.

281. Not all Bonner County Meetings have Zoom information when the hearing notice is published.

282. Not all Bonner County meetings are streamed over Zoom.

283. Claimant was deprived of his ability to attend in-person "all Bonner County Meetings" (not just Bonner County Board of County Commissioner meetings).

284. Claimant was not able to attend several meetings that did not have Zoom information.

285. Claimant was not provided Zoom information for all Bonner County meetings, nor could Claimant enter buildings to obtain Zoom information without fear of arrest.

286. Claimant could not participate remotely at all Bonner County meetings because there was not a remote option.

287. As an example, Claimant could not attend the February 1, 2024, Bonner County Board of Commissioners Meeting with the Planning Department & Prosecutor's Office because it was not streamed over Zoom.

288.  Bonner County advises citizens that: "remote participation is not intended as a substitute for in person, or written participation in the proceedings of county business. It is possible to have technology issues to include, but not limited to, difficulty hearing and being heard. If citizens have information to communicate to the County please come in person, or send your information in writing. The County cannot assure that the information will be received. Use of the technology platform is at the risk of the user. Technology failure will

not result in Bonner County re-agendizing and/or accepting post deadline information on any given item or issue. In person attendance is recommended."

289.  Additionally remote attendance at a public meeting is a constitutionally insufficient alternative channel of communication.

290. On or about February 26, 2024, Cramer had presented for filing a Notice of Tort Claim to Bonner County clerk Michael Rosedale.  *See* Exhibit 1.

291. On or about February 27, 2024, Omodt had actual knowledge the Notice of Tort Claim had been filed.

292. On or about February 27, 2024, Omodt had received a copy of the Notice of Tort Claim.

293. On or about February 27, 2024, Bradshaw had actual knowledge the Notice of Tort Claim had been filed.

294. On or about February 27, 2024, Bradshaw had received a copy of the Notice of Tort Claim.

295. On or about March 7, 2024, the BOCC held a meeting.

296. At the March 7, 2024, the BOCC voted to retroactively trespass Cramer from the Bonner County Administration Building for one year from January 26, 2024 to January 25, 2025, have the chairman draft a signed written notice identifying the conduct giving rise to the trespass, provide means for accessing necessary county services and a method for appeal.

297. Prior to the vote, the BOCC received a legal opinion recommending that the BOCC should not trespass the individuals, and instead take action to revoke the previous action.

298. The motion to trespass did not identify any behavior of Cramer giving rise to the trespass.

299. Commissioners Omodt and Bradshaw voted in favor of the motion.  Commissioner Williams voted against the motion.

300. By passing the motion, the BOCC ratified the conduct of Omodt at the January 26, 2024 meeting of the BOCC.

301. By passing the motion, the BOCC ratified the decision to trespass Rick Cramer from BOCC meetings.

302. By passing the motion, the BOCC ratified the decision to arrest Rick Cramer for trespassing.

303. By voting to pass the motion, Bradshaw and Omodt engaged in the unconstitutional conduct complained of herein.

304. Omodt sent a letter to Cramer via Cramer's attorney via certified mail on March 22, 2024. A true and correct copy of the letter is attached hereto as Exhibit 22.

305. On or about April 1, 2024, Cramer filed an Appeal of the Motion to Trespass.

306. A fair and accurate copy of the Appeal is attached hereto as Exhibit 23, with its exhibits omitted.

307. Omodt and Bradshaw received a copy of the Appeal on or about April 1, 2024.

308. On or about April 4, 2024, the Appeal was granted.

309. The torts complained of herein include deprivation of civil rights under color of state law in violation of 42 U.S.C. § 1983, false arrest, malicious prosecution, and defamation.

### IV. First Cause of Action: 42 USC 1983; First Amendment

310. All other paragraphs of this complaint are incorporated by reference as if fully set forth herein.

311. Cramer is entitled to those rights secured by the First Amendment of the United States Constitution to freely associate with other persons, assemble, consult and speak with government officials and the public, and the right to petition the government for a redress of his grievances.

312. Cramer is entitled to the First Amendment freedom of speech, including the symbolic speech of in-person attendance at public meetings, and participating in the limited public forum of a Bonner County Board of County Commissioners' meeting.

313. Debate on public issues should be uninhibited, robust, and wide-open. *N.Y. Times Co. v Sullivan*, 376 US 254, 270, 84 S Ct 710, 11 L Ed2d 686 (1964).

314. The Ninth Circuit has emphasized, "Citizens have an enormous first amendment interest in directing speech about public issues to those who govern…." *White v. City of Norwalk,* 900 F.2d 1421, 1425 (9th Cir.1990).

315. Cramer has a statutory right to attend public meetings of the BOCC pursuant to Idaho Code § 74-203(1).

316. Bonner County Commissioner meetings, where the public has the opportunity to address officers of a local government or local governmental agency, are limited public fora. *See e.g. White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir.1990).

317. Omodt's oral notice of trespass violated Cramer's First Amendment right to attend, observe, participate, associate, and provide symbolic or actual speech at the meeting and subsequent meetings.

318. Omodt acted under color of state law when he issued the oral notice of trespass.

319. Omodt was either serving a public function when issuing the oral notice of trespass, engaged in joint action with the County, used governmental compulsion or coercion to establish or enforce the trespass notice, or otherwise established a sufficient governmental nexus with his conduct to establish municipal liability.

320. Omodt exercised power possessed by virtue of state law and made possible because he was clothed with the apparent authority of state law.

**COMPLAINT**                                                                                          **PAGE: 28**

321.  Prohibiting Cramer's in-person attendance and requiring attendance remotely via Zoom violated Cramer's constitutional rights by preventing him from providing impactful in-person testimony, or from showing his face and facial expressions, and otherwise limiting the effectiveness of his voice and presentation, and preventing the symbolic speech of his in-person attendance to show support for Commissioner Williams.

322. Participation in public meetings by telephone and videoconference could not cure the First Amendment harm a plaintiff suffered through physical exclusion from a public meeting because the plaintiff was barred from in-person communication. *Miller v. Heimuller*, No. 3:23-CV-293-SI, 2023 WL 2474345, at *5 (D. Or. Mar. 13, 2023). *See also Cyr v. Addison Rutland Supervisory Union*, 60 F. Supp. 3d 536, 549 (D. Vt. 2014) (noting that regulation of a medium inevitably affects communication and that the First Amendment did not permit the public entity to confine plaintiff's speech to remote participation by issuing a blanket notice of trespass when less burdensome alternatives exist because his speech may not have had the same effect on the board or other members in attendance at board meetings as if he were physically present).

323.  Relegating Claimant to a virtual format infringed on his First Amendment right to assemble and associate with other members of the public and Commissioner Williams, and to engage in symbolic speech and actual speech.

324.  Omodt's oral notice of trespass was ratified at the March 7, 2024 meeting of the BOCC.

325.  Bonner County is liable for the oral notice of trespass because it ratified the conduct.

326.  The decision to ratify the notice of trespass established that the unconstitutional conduct was the custom or policy of Bonner County.  It was a "deliberate choice" to follow a course of action "made from among various alternatives by the official or officials responsible for establishing final policy" with respect to the notice of trespass.

327. Bonner County failed to adequately train the Chair of the BOCC in how to preside over a meeting in compliance with the First Amendment.

328. Bonner County failed to adequately train the BOCC when a trespass notice could be given to prohibit a citizen from attending a public meeting.

329. Bonner County had notice of the unconstitutional behavior of the Commissioners and failed to train the BOCC and its members to comply with the First Amendment.

330. Omodt and Bradshaw voted to trespass Cramer at the March 7, 2024 meeting and thereby violated his First Amendment rights.

331. Omodt and Bradshaw acted with reckless indifference to the Constitutional rights of Cramer at the March 7, 2024 meeting.

332. Omodt acted with an improper motive or unlawful purpose when depriving Cramer of his First Amendment rights.

333. As a direct and proximate result of the violation of law as aforesaid, Cramer was damaged with suffering, emotional distress, public embarrassment, mental anguish, humiliation, and damage to reputation.

334. Cramer is entitled to recover punitive damages.

335. Cramer suffered damages in an amount to be proven at trial.

336. It is clearly established law that Defendants could not prevent entry into a building being used as a limited public forum at a time when Cramer was not being disruptive.

337. Defendants do not have qualified immunity.

### V.  Second Cause of Action: 42 USC 1983; First Amendment Retaliation.

338. The other paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

339. Cramer engaged in protected speech at the meetings of the BOCC during the years 2023

and 2024.

340. Cramer engaged in protected speech when he sent the letter to the Idaho Association of counties that was critical of Omodt.

341. Cramer engaged in protected speech critical of Omodt and/or Bradshaw.

342. The January 26, 2024 oral and emailed trespass notice, the oral trespass notice on March 7, 2024, and the written trespass notice within Exhibit 22 were retaliation for the exercise of Cramer's speech.

343. The prohibition to attend the meetings and arrest adversely affected Cramer and his speech.

344. Omodt and Bradshaw acted with reckless indifference to the Constitutional rights of Cramer when they retaliated against him.

345. Cramer is entitled to recover punitive damages.

346. As a direct and proximate result of the violation of law as aforesaid, Cramer was damaged with suffering, emotional distress, public embarrassment, mental anguish, humiliation, and damage to reputation.

347. Cramer is damaged in an amount to be proven at trial.

**VI.  Third Cause of Action: 42 USC 1983; False Arrest**

348. The other paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

349. On January 26, 2024, Omodt conducted a citizen's arrest of Cramer.

350. Omodt intended to confine Cramer.

351. Cramer experienced the confinement of the arrest, and was made aware of it.

352. Omodt did not have probable cause to arrest Cramer.

353. The arrest was not legally justified.

354. Omodt acted with an improper motive or with reckless indifference when he arrested

Cramer.

355. Bonner County ratified this conduct on March 7, 2024.

356. It was the official policy of Bonner County to make the arrest because the arrest was made by the Chair of the BOCC at a public meeting.

357. As a direct and proximate result of the violation of law as aforesaid, Cramer was damaged with suffering, emotional distress, public embarrassment, mental anguish, humiliation, and damage to reputation.

358. Cramer is damaged in an amount to be proven at trial.

359. Cramer is entitled to punitive damages.

360. Defendants do not have qualified immunity.

## VII. Fourth Cause of Action: Deprivation of Rights without Due Process

361. The other paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

362. Chairman Omodt did not give Cramer an opportunity to be heard on whether or not it was proper to trespass him for one year from all Bonner County meetings.

363. The notice of trespass did not provide Cramer notice of the right to contest the decision to trespass, nor did the notice of trespass provide Cramer notice of any opportunity to appeal the decision to trespass.

364. Because the trespass notice never provided Cramer an opportunity to be heard on whether or not it was proper to trespass him and thereby deprived him of his liberty interests, either before the deprivation, or afterwards, the trespass notice deprived Cramer of significant liberty interests without due process of law.

365. Due process of law guards citizens against the arbitrary or erroneous deprivations of their liberty.

366. When the Commissioners adjudicate a particular person a safety threat, or deprive a particular person of a liberty interest to attend public meetings, they are not functioning in a legislative capacity.

367. In such situations, the hearings are adjudicatory, which thereby necessitate the right of the interested persons to be heard.

368. Due process attached to Cramer because the deprivation occurred as a result of an adjudicatory process rather than a legislative process. *See Harris v. Cty. of Riverside*, 904 F.2d 497, 501 (9th Cir. 1990). If the matter is one in which "all are equally concerned," the matter is a legislative process and due process rights do not attach. *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445, 36 S.Ct. 141, 60 L.Ed. 372 (1915). If the matter is one in which a "relatively small number of persons [are] concerned, who [are] exceptionally affected, in each case upon individual grounds," then the process is adjudicatory and due process rights attach. *Id.* at 446, 36 S.Ct. 141; *see also Londoner v. City & Cty. of Denver*, 210 U.S. 373, 385–86, 28 S.Ct. 708, 52 L.Ed. 1103 (1908) (holding that a small number of people who were disproportionately affected by a tax were entitled to a hearing before that tax was enacted).

369. Here, the motion to trespass Cramer was an adjudicatory hearing specifically affecting Cramer, and thereby conferring upon him a due process right of notice and an opportunity to be heard.

370. Prior to the hearing, Cramer had requested to make a comment.

371. Cramer's counsel was present and not provided an opportunity to speak.

372. The Commissioners had actual knowledge of the presence of Cramer and his attorney.

373. Bonner County violated Cramer's due process right by refusing to permit Cramer to speak.

374. As a result of the Due Process violation, it was the official policy to trespass Cramer until the decision was reversed on April 4, 2024.

375. As a direct and proximate result of the violation of law as aforesaid, Cramer was damaged with suffering, emotional distress, public embarrassment, mental anguish, humiliation, and damage to reputation.

376. Cramer additionally suffered the loss of his constitutional rights without due process of law.

377. Omodt and Bradshaw were deliberately indifferent to Cramer's right to due process.

378. Omodt and Bradshaw know or should have known that they were violating Cramer's due process rights.

379. Bonner County failed to adequately train Omodt and Bradshaw on the due process rights of citizens they are seeking to trespass from public meetings.

380. The violation of due process was the official policy of Bonner County made by the persons with final decision-making authority.

381. Bonner County is liable for the damages caused by its failure to train and/or by its official policy.

382. Cramer is entitled to recover punitive damages.

383. Cramer suffered damages in an amount to be proven at trial.

### VIII.    Fifth Cause of Action: Bill of Attainder

384. The other paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

385. The law does not allow the Chairman to exercise political power to banish citizens from public meetings.

386. A legislative act that 1) is specific to a person or persons, 2) imposes punishment on a specific individual or group, and 3) imposes that punishment without a judicial trial, is an unconstitutional Bill of Attainder.  *See. e.g. State v. Haggard,* 146 Idaho 37 (2008).

387. As a historical background, a Bill of Attainder was a parliamentary act punishing specific persons in sixteenth, seventeenth, and eighteenth century England.  It was a political act for dealing with persons who were perceived by parliament as attempting to challenge the prevailing faction's power or authority. *See United States v. Brown,* 381 U.S. 437 (1965), *citing e.g.*, 3 Jac. 1, c. 2; 10 & 11 Will. 3, c. 13; 13 Will. 3, c. 3; 9 Geo. 1, c. 15.

388. During the American Revolution, the legislatures of all thirteen States passed bills of attainder directed against the Tories (those colonists who remained loyal to the British Crown).  *Id citing* Van Tyne, The Loyalists in the American Revolution, apps. B & C (1902); Thompson, Anti-Loyalist Legislation During the American Revolution, 3 Ill.L.Rev. 81, 147; Reppy, The Spectre of Attainder in New York, 23 St. John's L.Rev. 1. *See Republica v. Gordon*, 1 Dall. 233; *Cooper v. Telfair,* 4 Dall. 14.

389. The Bill of Attainder Clause was not intended as a narrow, technical prohibition, but rather as an implementation of the separation of powers, a general safeguard against legislative exercise of the judicial function, *i.e.,* trial by legislature.  *Id* at 442.

390. The dangerous consequences of the power of government to pass a Bill of Attainder are clear: "**if it may banish at discretion all those whom particular circumstances render obnoxious, without hearing or trial,** no man can be safe, nor know when he may be the innocent victim of a prevailing faction. The name of liberty applied to such a government would be a mockery of common sense." *Id* at 444 *citing* The Federalist, No. 44, p. 351 (Hamilton ed. 1880).

391. The Bill of Attainder Clause not only was intended as one implementation of the general principle of the separation of power, but also reflected the Framers' belief that a political branch is not so well suited as politically independent judges and juries to the task of ruling upon the blameworthiness, of, and levying appropriate punishment upon, specific persons. *Id* at 445.

392. Here the BOCC banished Cramer from public meetings and participation in the political process.

393. Here, the motion to trespass deprived Cramer of his liberty interests under color of state law.

394. The Motion did not specify the grounds for the decision but stated that specification of the grounds would be forthcoming.

395. The act of trespassing Cramer was an unconstitutional Bill of Attainder. It was an unconstitutional act of mere political will by the prevailing faction to punish Cramer.

396. The act of trespassing Cramer was an act of political will by Omodt and Bradshaw damaging Cramer.

397. As a direct and proximate result of the violation of law as aforesaid, Cramer was damaged with suffering, emotional distress, public embarrassment, mental anguish, humiliation, and damage to reputation.

398. Cramer is entitled to recover punitive damages.

399. Cramer suffered damages in an amount to be proven at trial.

### IX. Sixth Cause of Action: State Law Defamation Omodt

400. The other paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

401. On or about January 30, 2024, Chairman Omodt held a press conference at the County Administration Building regarding having issued the trespass notice to Cramer and Dave Bowman.

402. The press conference was in the course and scope of his duties as Chairman and Commissioner of Bonner County.

403. In response to a question about the "persons" who were recently trespassed, Chairman Omodt told the press that the trespass notice was given because of written threats of violence.

404. Chairman Omodt implied that Cramer made a threat of violence.

405. Chairman Omodt falsely told the media that Cramer refused to leave peacefully.

406. Cramer left peacefully without unlawful obstruction, resistance, or violence, and submitted to the peace officer's taking custody of him following Omodt's declaration of an arrest. No physical force was ever needed.

407. Chairman Omodt falsely stated or implied that Cramer said "no I will not" in response to a question about whether or not he would leave peacefully.

408. Chairman Omodt falsely stated or implied that Cramer said "no, not gonna happen." This was a statement made by David Bowman, not Cramer.

409. Chairman Omodt implied that Cramer engaged in unlawful resistance, obstruction or violence by stating that he would not leave peacefully.

410. Chairman Omodt stated or implied that Cramer threatened to take offensive action or threaten to shoot someone for doing their job, and was therefore trespassed.

411. Chairman Omodt stated or implied that it was permissible for Cramer to have been trespassed, and have to attend public meetings remotely, because he deserves an inconvenience for making written threats of gunfire.

412. Idaho recognizes that defamation may occur by implication from false suggestions, impressions, or implications arising from otherwise truthful statements. *Verity v. USA Today*, 164 Idaho 832, 844, 436 P.3d 653, 665 (2019).

413. The statements and implications falsely suggested that Cramer acted and threatened violence and posed a safety risk to the public or Bonner County staff.

414. By holding a press conference where he knew news reporters were present and publishing the statements in print and online, Chairman Omodt intended the statements to reach a wide audience.

415. Chairman Omodt acted with malice when he defamed Cramer.

416. Cramer enjoyed a reputation for being a peaceful and law-abiding citizen. He has never been convicted of any crime of violence.

417. Cramer categorically rejects and denounces unlawful threats of violence and violence.

418. Cramer's reputation was damaged by Chairman Omodt's false statements or implications that Cramer engaged in threats of violence.

## X.  Seventh Cause of Action: State Law Defamation Bradshaw

419. The other paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

420. On or before February 2, 2024, Commissioner Bradshaw made statements in writing or orally to a person he knew to be a reporter for the *Bonner County Daily Bee*.

421. The statements were made in the course and scope of his duties as a Commissioner of Bonner County.

422. Commissioner Bradshaw, based upon information and belief, was then and there in Bonner County, Idaho.

423. Commissioner Bradshaw told the reporter that disturbances were allegedly made by

Bonner County resident Rick Cramer at the board's January 23, 2024 meeting.

424. Commissioner Bradshaw said the unrest is causing safety concerns for county staff.

425. Commissioner Bradshaw said "there has been continued disturbances and disorderly behavior to the point that we have not been able to conduct county business," he said. "This is nothing less than an organized group of insurrectionist[s] that is being orchestrated by the group's leader."

426. Commissioner Bradshaw implied that Cramer engaged in violent and disorderly behavior, amounting to an organized insurrection, and posed a risk of being a mass shooter, violently threatening staff.

427. An insurrection is a violent uprising against an authority or government.

428. Briefly speaking out of turn when not recognized by the Chair does not amount to an insurrection.

429. Idaho Code § 46-601 permits the Governor to declare an extreme emergency to suppress a violent insurrection.

430. Commissioner Bradshaw said that "with the increase in mass shootings across this nation, we will push this forward to the courts, even if it takes [the Idaho State Police] and the governor's office."

431. Commissioner Bradshaw stated or implied that Cramer was part of an organized conspiracy to violently overthrow the county government such that the governor needed to be called to suppress the insurrection and establish law and order.

432. Commissioner Bradshaw intended his statements to reach a wide audience in Bonner County by making the statements to a reporter for the *Daily Bee.*

433. Conspiracy to violently overthrow the government is a felony.

434. These statements or implications were false and defamatory.

**COMPLAINT**                                                                 **PAGE: 39**

435. A plaintiff need not prove special damages with defamation *per se,* which is a defamation that imputes conduct constituting a criminal offense chargeable by indictment or by information either at common law or by statute and of such kind as to involve infamous punishment (death or imprisonment) or moral turpitude conveying the idea of major social disgrace. *Barlow v. Int'l Harvester Co.*, 95 Idaho 881 (1974).

436. The defamation by Commissioner Bradshaw was a defamation *per se.*

437. These statements and implications were made maliciously and to advance Commissioner Bradshaw's political agenda.

438. Cramer enjoyed a reputation for being a peaceful and law-abiding citizen. He has never been convicted of any crime of violence.

439. Cramer categorically rejects and denounces unlawful threats of violence, violence, and/or the unlawful overthrow of the civil government.

440. Cramer's reputation was damaged by Commissioner Bradshaw's false statements or implications that Cramer engaged in threats of violence and an organized insurrection.

WHEREFORE;

441. **Plaintiff demands a trial by a jury of his peers on all issues so triable.**

442. Plaintiff demands such legal or equitable relief as provided by law,

including, but not limited to, the following:

a. Compensatory damages of $1,455,000;

b. Punitive damages in an amount to be determined at trial;

c. Presumed damages;

d. Reasonable attorney fees and costs in bringing this action;

e. Prejudgment interest; and

f. Any other relief that this Court deems just and equitable.

DATED: this 3 day of September, 2024.

SHECKLER LAW OFFICE, PLLC


__/s/ Daniel Sheckler_____
Daniel Sheckler, Idaho State Bar #7773
Attorney for Plaintiff Richard Cramer