Daniel Sheckler
SHECKLER LAW OFFICE, PLLC
500 N. Government Way, Ste. 600
Coeur d'Alene, Idaho 83814
Ph.  (208) 292-4649
Fax (208) 292-4632
ISB#7773

*Attorney for Richard Cramer*

BOARD OF COUNTY COMMISSIONERS
OF BONNER COUNTY, STATE OF IDAHO

------------------------------------------------------------------------------------------------------------------

|                                     |     |          |
|-------------------------------------|-----|----------|
|                                     | )   |          |
|                                     | )   |          |
| In the matter of the trespass of    | )   |          |
|                                     | )   |          |
| RICHARD CRAMER                       | )   |          |
|                                     | )   | **APPEAL** |
|                                     | )   |          |
|                                     | )   |          |
|                                     | )   |          |

------------------------------------------------------------------------------------------------------------------

COMES NOW, Richard Cramer by and through his attorney, Daniel Sheckler and hereby appeals and

objects to the March 7, 2024 decision of the Board of County Commissioners to trespass him, and objects

to the appellate process and demands constitutionally adequate proceedings.

I.      **PRELIMINARY FACTUAL ALLEGATIONS AND OBJECTIONS TO THE APPELLATE PROCEDURE**

1.   **Written Notice of the Opportunity to Appeal Was Untimely Given.**

A mere ten days before the deadline for appeal, the Chairman of the BOCC sent a letter to Mr. Cramer's

Counsel via certified mail on March 22, 2024.  A true and correct copy of the letter is attached hereto as

Exhibit 1. A copy was not sent by email, even though the BOCC had Mr. Cramer's counsel's email.  Thus, the

letter did not arrive until March 25, 2024 depriving Mr. Cramer of valuable time to prepare his appeal.  The

notice is inadequate to provide due process.

The Motion passed by the BOCC on March 7, 2024 did not specify the grounds for the decision to

trespass, and instead delegated that decision to the Chairman to put in a written letter. Therefore, it was

not until receipt of the letter that Mr. Cramer had any basis to know the grounds for the Board's decision.

Therefore Mr. Cramer has insufficient time to prepare his appeal, and gather evidence for submission into

the record and contest the grounds for the trespass.

**2.   The Appellate Procedure is Inadequate.**

The written notice in the letter does not specify the appellate procedure other than to submit the

appeal in writing.  It does not refer to a county ordinance or state statute, such as the Idaho Administrative

Procedures Act, that governs the appellate procedure.

Without such an ordinance or procedure, the appeal is deeply flawed.  There is an absence of the ability

to subpoena witnesses to attend the hearing or to subpoena documents for submission at the hearing.  Nor,

is it clear what standards of evidence are to be followed.  Nor is it clear the rules that will govern the

proceeding. In addition to demanding notice of the specific allegations against him, Mr. Cramer demands

the opportunity to subpoena witnesses, cross examine witnesses, and confront the witnesses against him

alleging the intimidation or harassment.  Without such procedural safeguards in place, the appellate

process is insufficient.

Therefore, there is a significant risk that the process is entirely a show trial, a show appeal, and a sham

proceeding because the rules and standards are completely arbitrary and are made up by the BOCC on an

*ad hoc* basis.

**3.   The Appeal is not Substantively Governed by Statute or Ordinance**

The letter does not specify any statute or ordinance that governs the decision.  Bonner

County Code 1-200 does not give the BOCC the authority to prospectively trespass persons from

Bonner County property nor does it specify the substantive standards by which a person would

be prospectively trespassed.  The ordinance simply states that a person can be removed from

"the meeting."  It does not give the authority to trespass from future meetings.  Thus, any

DocuSign Envelope ID: 7526F50D-C82A-42EE-83CD-2CAADB762B1

substantive standards for a prospective trespass are arbitrary and not in conformance with any statute or ordinance.

### 4.  The Written Notice is Vague

Exhibit 1 is vague and insufficiently specific to constitutionally notify Richard Cramer of the factual basis for the decision.  Richard Cramer demands a bill of particulars stating with specificity the conduct that was "regularly disruptive" at business meetings, including when the disruptions occurred and the nature of the disruptive conduct; further, specify the "attempts to harass or intimidate", including when the attempts were made, the specific conduct alleged to be harassing or intimidating, where the attempts were made, and the person or person(s) who were alleged to be affected.  The allegations are too vague or indefinite for Richard Cramer to prepare a sufficient defense.  The vague allegations violate his due process rights.

### 5. The "Appeal" is not before an Impartial Decision Maker

Next, Richard Cramer demands a hearing by a neutral decision-maker.  Here, Chairman Omodt and Commissioner Bradshaw are named defendants in his notice of tort claim for these allegations.  Their bias and self-interest in this matter prohibit them from rendering a fair and impartial decision.  The lack of an unbiased decision-maker violates due process.

Additionally, Mr. Cramer cannot "appeal" the decision of the BOCC to the exact same body that made the decision to trespass him at the March 7, 2024 meeting.  There is an absence of a neutral appellate decision maker.  Therefore, the "appeal" procedure violates due process.

### 6.  Richard Cramer has First Amendment and Due Process Rights to Participate at the Hearing on the Appeal.

Richard Cramer is entitled to rights reflected in the United States Constitution and Idaho State Constitution, including but not limited to those rights secured by the First Amendment of

the United States of America and Article I, §§ 9 and 10 of the Idaho Constitution, to freely

associate with other persons, assemble, consult and speak with government officials and the

public, and the right to petition the government for a redress of his grievances, and may

participate in a limited public forum.

Here, there was never an original hearing.  The "appeal" is before the BOCC and he is

prevented from appearing in-person to attend the "appellate" hearing due to the Notice of

Trespass and the chilling effect of his prior unconstitutional arrest.  This significantly deprives him

of due process by limiting the manner in which he may be literally and symbolically heard.

### 7.   Unconstitutional Bill of Attainder

Richard Cramer objects to the Bill of Attainder procedure that constitutes this appeal.  The vote of the

Board of County Commissioners to punish Mr. Cramer without trial is an unconstitutional Bill of Attainder.

The sham "appeal," lacking in adequate legal authority governing the appeal procedurally and substantively

before the same body making the initial decision, is simply a second Bill of Attainder, *i.e*. Trial by Legislature.

This is unconstitutional and violates Article 1 Section 16 of the Idaho Constitution and the Bill of Attainder

Clause of the United States Constitution, as well as the Due Process clause of both constitutions.

### II.      ADDITIONAL FACTUAL ASSERTIONS AND LEGAL OBJECTIONS

All relevant acts complained of herein occurred in Bonner County, State of Idaho. Richard

Cramer is a resident of Bonner County, State of Idaho, and resides at 31 E. Evergreen Rd., Sagle,

Idaho 83860. Mr. Cramer is married, and retired.  He regularly attends church service, and is

active in the community.  Mr. Cramer is interested in the well-functioning government of Bonner

County, and in pursuit of such, he regularly attends public meetings for purposes of interacting

with government officials and communicating his views to government officials and to the public

regarding county governance and related matters of public concern.

DocuSign Envelope ID: 7526F50D-C82A-43EE-83C0-2CAADB762B11

Bonner County is a body politic and corporate in the State of Idaho. Luke Omodt is an elected commissioner of Bonner County. Luke Omodt is the chairman of the Bonner County Board of County Commissioners. Steve Bradshaw is an elected commissioner of Bonner County.  The Bonner County Administration Building is the site of the meetings of the BOCC  and is located at 1500 US-2, Sandpoint, ID 83864.

Chairman Omodt has presided over numerous meetings of the Board of County Commissioners.  He has consistently failed to uphold uniform standards of procedure and decorum.

On or about March 13, 2023, Prosecuting Attorney Louis Marshall sent the BOCC a memorandum cautioning them not to trespass citizens from regular business meetings of the BOCC.  A true and correct copy of the Memorandum is attached hereto as Exhibit 2.  Despite having such legal advice, Chairman Omodt intentionally and repeatedly sought to lump persons who had disrupted meetings in with violent people, in an attempt to get legal sanction to wrongfully trespass persons.  For example, please see emails between Luke Omodt and Louis Marshall in July of 2023 attached hereto as Exhibit 3.

On or about January 12, 2024, Richard Cramer sent a letter to the Idaho Association of Counties, a fair and accurate copy of which is attached hereto as Exhibit 4.  Mr. Cramer sought the removal of Chairman Omodt from being the Legislative Representative for the Idaho Association of Counties.  The letter was very critical of Chairman Omodt.   The actions taken by the BOCC are retaliation for the political criticism Mr. Cramer has levied against Chairman Omodt and Commissioner Bradshaw.

DocuSign Envelope ID: 7526F50D-C82A-42EE-83C0-2CAADB762B11

On or about January 20, 2024, Chairman Omodt again tried to tie ordinary disruptions in with violent conduct by sending an email to Sheriff Wheeler, a true and correct copy is attached hereto as Exhibit 5.

Dave Bowman sent an email to Bob Howard and the BOCC on January 24, 2024, a true and correct copy of which is attached hereto as Exhibit 5B.

On January 25, 2024 at 12:05 p.m., Chairman Omodt sent an email to Bill Wilson telling him that Rick Cramer was to be immediately trespassed, despite there not being any vote of the BOCC at that time.  A true and correct copy of the email is attached hereto as Exhibit 6.

On January 25, 2024, Chairman Omodt received a letter from Chief Corey Coon of the Sandpoint Police Department.  A true and correct copy of which is attached hereto as Exhibit 7. The letter advised that the City will not respond to trespassing complaints due to the lack of procedures with the county and the desire to avoid liability.

On January 26, 2024 Chairman Omodt sent an email to county employees a true and correct copy of which is attached hereto as Exhibit 8.  The email identifies that Rick Cramer is trespassed from the BOCC, even though no motion was passed by the BOCC.  Additionally, the basis for the trespass against Mr. Cramer was Mr. Bowman's email and his threats of "lawfare."

On January 26, 2024 Chairman Omodt sent an email to Rick Cramer, a true and correct copy of which is attached hereto as Exhibit 9.

On January 28, 2024 Chairman Omodt again acknowledged that "*[t]hese two men* were trespassed for their regular and frequent disorderly conduct and the clear threat of violence *issued by Mr. Bowman*." (emphasis added).  A true and correct copy of the email is attached hereto as Exhibit 10.  Chairman Omodt arbitrarily and capriciously lumped Mr. Cramer in with

DocuSign Envelope ID: 7526F50D-C82A-43EE-83C0-2CAADB762B11

Mr. Bowman, even though Mr. Cramer never made any threats.  Many other persons, including Dan Rose and Spencer Hutchings, disrupted meetings of the BOCC and approached the Commissioner's table.  Yet, Rick Cramer is arbitrarily and capriciously selected for punishment because Chairman Omodt was angry at Dave Bowman at the time.  Other people, like Dan Rose or Spencer Hutchings or others do not get trespassed.

On or about January 26, 2024 Luke Omodt unlawfully arrested Mr. Cramer.  A fair and accurate, albeit redacted copy of the police report is attached hereto as Exhibit 11 and the Citation is attached as Exhibit 12.

On or about January 30, 2024 the Sheriff and the Prosecuting Attorney for Bonner County issued a joint statement.  A true and correct copy of which is attached hereto as Exhibit 13.  The statement notes that no crimes have been committed at commissioner meetings, and heated speech was consistent with the political process, and cautioned the BOCC against incurring liability for wrongfully trespassing citizens.

Indeed, on January 30, 2024 Commissioner Williams sent an email to the BOCC noting that there was no threat by Richard Cramer, a true and correct copy of the email thread is attached hereto as Exhibit 13B.

1. **Mr. Cramer is not "regularly disruptive at business meetings."**

Richard Cramer has attended many meetings of the BOCC and does not regularly disrupt them.  Submitted concurrently herewith and incorporated herein by reference is Exhibit 14, a USB disk containing videos, including the videos of the meetings of the BOCC discussed herein.  Hereinbelow is a summary of each meeting of the BOCC he has attended since January of 2023.

APPEAL                                                                                                                  PAGE: 7

Richard Cramer attended the February 21, 2023 BOCC meeting.[1] Mr. Cramer made a public comment, as shown at approximately time stamp 22:31.  Mr. Cramer did not disrupt the meeting in any significant way.

Richard Cramer attended the June 20, 2023 BOCC meeting.[2]  Mr. Cramer made a public comment, as shown at approximately time stamp 2:05:07.  Mr. Cramer did not disrupt the meeting in any significant way.

Richard Cramer attended the August 29, 2023 BOCC meeting.[3] Mr. Cramer made a public comment, as shown at approximately time stamp 1:03:12.  Mr. Cramer did not disrupt the meeting in any significant way.

Richard Cramer attended the September 5, 2023 BOCC meeting.[4]  Mr. Cramer made a public comment, as shown at approximately time stamp 51:56.  Mr. Cramer did not disrupt the meeting in any significant way.

Richard Cramer attended the October 24, 2023 BOCC meeting.[5] Mr. Cramer made a public comments, as shown at approximately time stamp 54:36 and 1:34:40.  Mr. Cramer did not disrupt the meeting in any significant way.

---

1  The BOCC should take judicial notice of the video of this meeting as it is within their custody and control.  The video of the public meeting is available at:
https://www.youtube.com/watch?v=NFeEP6UIw8E
2  The BOCC should take judicial notice of the video of this meeting as it is within their custody and control.  The video of the public meeting is available at:
https://www.youtube.com/watch?v=NFeEP6UIw8E
3  The BOCC should take judicial notice of the video of this meeting as it is within their custody and control.  The video of the public meeting is available at:
https://www.youtube.com/watch?v=WgxZraa_M4I.
4  . The BOCC should take judicial notice of the video of this meeting as it is within their custody and control.  The video of the public meeting is available at:
https://www.youtube.com/watch?v=Ewd5t1l0qDw.
5  The BOCC should take judicial notice of the video of this meeting as it is within their custody and

Richard Cramer attended the November 16, 2023 BOCC meeting.[6] During a discussion about taxpayer dollars for the assignment of a protection detail to protect Commissioner Williams from Commissioner Bradshaw's adjudicated unlawful threats, Mr. Cramer made a public comment out of order as shown at approximately time stamp 43:29.  Chairman Omodt was explaining how he thought he should have access to records about the deputies assigned to monitor the commissioners in executive session (for Commissioner Wiliams' safety, pursuant to the Court Order).  Mr. Cramer's compassion for a woman who was the victim of violent threats by a commissioner resulted in him getting up out of his chair to leave.  While he left the meeting he made an out of order comment: Mr. Cramer essentially said "you know what Luke, the reason that Deputy is here is because he threatened to shoot her…" Mr. Cramer then announced he was leaving.  He then walked out.  A deputy walked out with him, but he was already on his way out. This out-of-order comment lasted approximately 12 seconds, and was a minor disruption of the meeting.  It did not significantly disrupt the meeting such that the BOCC was prevented from carrying out its duties at the meeting.  Indeed, just 21 seconds after the initial disruption, debate had resumed and the meeting proceeded.

Richard Cramer attended the November 21, 2023 BOCC meeting.[7] Mr. Cramer did not make a public comment at the meeting. Mr. Cramer did not disrupt the meeting in any significant way.

---

control.  The video of the public meeting is available at:
https://www.youtube.com/watch?v=4646thVLjoo.
[6]  The BOCC should take judicial notice of the video of this meeting as it is within their custody and control.  The video of the public meeting is available at:
https://www.youtube.com/watch?v=Ewd5t1l0qDw.
[7]  The BOCC should take judicial notice of the video of this meeting as it is within their custody and control.  The video of the public meeting is available at:
https://www.youtube.com/watch?v=ELgaPrN14t0

Richard Cramer attended the November 28, 2023 BOCC meeting.[8] Mr. Cramer made public comments, as shown at approximately time stamps 1:44:32 and 1:57:36  Mr. Cramer did not disrupt the meeting in any significant way.

Richard Cramer attended the December 12, 2023 BOCC meeting.[9] Mr. Cramer made public comments, as shown at approximately time stamps 1:26:00 and 1:40:00  Mr. Cramer did not disrupt the meeting in any significant way.

Richard Cramer attended the December 19, 2023 BOCC meeting.[10] Mr. Cramer did not make a public comment at the meeting. Mr. Cramer did not disrupt the meeting in any significant way.

Richard Cramer attended the January 2, 2024 BOCC meeting.[11] Mr. Cramer made a public comment, as shown at approximately time stamp 1:50:25.  Mr. Cramer did not disrupt the meeting in any significant way.

Richard Cramer attended the January 9, 2024 BOCC meeting.[12] Mr. Cramer did not make a public comment at the meeting. Mr. Cramer did not disrupt the meeting in any significant way.

---

[8] The BOCC should take judicial notice of the video of this meeting as it is within their custody and control.  The video of the public meeting is available at https://www.youtube.com/watch?v=LJLctqgBJXY

[9] The BOCC should take judicial notice of the video of this meeting as it is within their custody and control.  The video of the public meeting is available at https://www.youtube.com/watch?v=NWR4DcPE9g4

[10] The BOCC should take judicial notice of the video of this meeting as it is within their custody and control.  The video of the public meeting is available at: https://www.youtube.com/watch?v=ShgaFWA_zl8

[11] The BOCC should take judicial notice of the video of this meeting as it is within their custody and control.  The video of the public meeting is available at: https://www.youtube.com/watch?v=jwagHHfAf6s

[12] The BOCC should take judicial notice of the video of this meeting as it is within their custody and control.  The video of the public meeting is available at https://www.youtube.com/watch?v=vJonUEFmIg0

Richard Cramer attended the January 16, 2024 BOCC meeting.[13] Mr. Cramer did not make a

public comment at the meeting. Mr. Cramer did not disrupt the meeting in any significant way.

At the January 23, 2024 BOCC meeting, Commissioner Asia Williams  placed several items on

the Agenda.  A true and correct copy of the Agenda is attached hereto as Exhibit 15.[14]

Commissioner Bradshaw made a motion to strike agenda items 1-21.  Commissioner Omodt

seconded the motion and the matter was then debated.  Commissioner Williams commented

that the BOCC was advised by legal not to remove items from the agenda.  This is because several

members of the public drove to the public meeting to participate in the agendized items.

Members of the public reasonably relied upon the agenda that was previously published.  At

timestamp 37:33 Mr. Cramer, gets up from his chair to leave.  After all, he was one of the

members of the public who anticipated getting to hear about the agendized items, and had

signed up for public comment, a true and correct copy of the sign up sheet is attached hereto as

Exhibit 15B .  He was unfairly deprived of this opportunity by the arbitrary decision of the BOCC

to remove the items.  After getting up to leave, Mr. Cramer said effectively "you know what Luke

you can throw me out"  Mr. Omodt affirmed that he could leave.  Chairman Omodt begins to ask

Mr. Cramer to leave, but never finishes his sentence.  Mr. Cramer stops speaking at

approximately 37:52.  The remaining disruption was caused by Chairman Omodt recessing the

---

13  The BOCC should take judicial notice of the video of this meeting as it is within their custody
and control.  The video of the public meeting is available in three parts at
https://www.youtube.com/watch?v=vJonUEFmIg0
https://www.youtube.com/watch?v=bvCZSYXnbpE
https://www.youtube.com/watch?v=dJR9Nv9BQYc
14  The BOCC should take judicial notice of the video of this meeting as it is within their custody
and control.  The video of the public meeting is available at
https://www.youtube.com/watch?v=b39WsYcGvWU

meeting and bickering with commissioners rather than presiding over the meeting, and stepping

down from the chair to make a motion to exclude Mr. Cramer from the meeting.  Mr. Cramer's

disruption lasted a mere 19 seconds.  Mr. Omodt did not actually ask Mr. Cramer to leave, before

Commissioner Williams interjected and invited him to stay.  ***Commissioner Williams invited him***

***to stay.***  Upon reasonable reliance upon the request of Commissioner Williams, Mr. Cramer

stayed.  Chairman Omodt then said I have asked you to leave.  Commissioner Williams said it

"was a tie."  Commissioner Williams' statements and conduct challenged the decision of the

Chair in ruling Mr. Cramer out of order.  Commissioner Bradshaw was silent and did not vote or

indicate his preference one way or the other.  The BOCC never resolved the issue.  Chairman

Omodt refused to effectively preside over the meeting and entertain a motion to exclude Mr.

Cramer and instead unilaterally recessed the meeting.  Mr. Cramer was reasonable in relying

upon the tie vote of the two commissioners that went unbroken and reasonable to remain on

the premises.

  Chairman Omodt contacted the police during the recess or caused the police to be contacted.

The police did not require Mr. Cramer to leave.  Please see the videos attached hereto as Exhibit

14.  The officer told Mr. Cramer that he cannot be disruptive, but that he is not going to take

action because the BOCC has to figure out their rules.  The officer told him "we have one

commissioner saying one thing and another commissioner saying another thing."  He then

gestured for him to go back into the meeting and said "if you're in the meeting those rules [not

to disrupt] exist."  Indeed, even the city police officer did not know how to break the tie vote of

the two county commissioners.  Mr. Cramer was reasonable to return to the meeting.

The meeting was brought out of recess, and the second part of the meeting proceeded, with

Mr. Cramer's presence.[15]  Mr. Cramer attended this second part and was not disruptive in any

significant way.

On or about January 26, 2024 at approximately 9:24 a.m. Chairman Omodt sent an email

from his county email account to Mr. Cramer notifying him that he is immediately trespassed

from all Bonner County Meetings from January 26, 2024 through January 25, 2025.  The Board of

County Commissioners did not pass a motion to trespass Mr. Cramer at the time the email notice

was sent, or thereafter. Chairman Omodt acted without authority of law, and had no lawful

power to unilaterally issue an emailed notice of trespass on January 26, 2024. Chairman Omodt

did not give Mr. Cramer an opportunity to be heard on whether or not it was proper to trespass

him for one year from all Bonner County meetings. The notice of trespass did not provide Mr.

Cramer notice of the right to contest the decision to trespass, nor did the notice of trespass

provide Mr. Cramer notice of any opportunity to appeal the decision to trespass.

Mr. Cramer did not immediately know the January 26, 2024 email had been sent.  At or about

that time on January 26, 2024, Mr. Cramer was sitting quietly in a chair at the public meeting of

the Board of County Commissioners, waiting for Chairman Omodt to call the meeting to order.

Mr. Cramer did not disrupt the January 26, 2024 meeting in any way. An audio and video

recording of the meeting is available online, demonstrating his respectful demeanor on January

---

15  The BOCC should take judicial notice of the video of this meeting as it is within their custody
and control.  The video of the second part of the public meeting is available at
https://www.youtube.com/watch?v=xs1No7hU9uk&t=631s

APPEAL                                                                                    PAGE: 13

26, 2024.[16]   Thereafter, at the meeting on the morning of January 26, 2024, Chair Omodt called

the meeting to order.  The Chair noted the absence of Commissioner Williams and then

proceeded to immediately ask on the record for Mr. Cramer to leave the meeting and notified

him that he was immediately trespassed from the County Administration Building for one year.

No motion to trespass was on the agenda for the January 26, 2024 public meeting.  A true and

correct copy of the Agenda is attached hereto as Exhibit 16. The Board of County Commissioners

did not pass a motion to trespass Mr. Cramer for one year.

Chairman Omodt then unconstitutionally arrested Mr. Cramer, as explained in Mr. Cramer's

February 26, 2024 Notice of Tort Claim incorporated by reference as if fully set forth herein.  A

true and correct copy of the Notice of Tort Claim is attached hereto as Exhibit 17.

Following Chairman Omodt's unconstitutional arrest, Mr. Cramer's speech and attendance

has been chilled, and he has complied with the unlawful and unconstitutional notice of trespass.

He has attended the following meetings of the BOCC remotely via zoom: February 6, 2024,

February 13, 2024 February 20, 2024 March 5, 2024, March 7, 2024, March 12, 2024 March 19,

2024 and March 26, 2024.  He has not disrupted those meetings in any significant way.

Thus, a neutral observer would recognize that Mr. Cramer has meaningfully and respectfully

participated in the public meetings of the BOCC over the course of more than a year.  Two minor

disruptions lasting a few seconds hardly amount to "being regularly disruptive at business

meetings" as alleged in Exhibit 1.  It is clearly the unreasonable punishment prohibited in the

---

16 The BOCC should take judicial notice of the video of this meeting as it is within their
custody and control.  The video of the second part of the public meeting is available at:
https://www.youtube.com/watch?v=qEAUwtEw6Iw

case law cited in the Notice of Tort Claim, and an unreasonable prohibition on Mr. Cramer's speech.

**2.  There is no evidence of Mr. Cramer "Attempting to Harass or Intimidate County Staff from performing the functions and responsibilities of their job."**

As noted above, Mr. Cramer cannot reasonably respond to these allegations.  There is no allegation other than a conclusion.  If approaching the commissioners while leaving and speaking is the alleged "harassing and intimidating" conduct, then the videos speak for themselves.  The speech is not a true threat within the meaning of the First Amendment jurisprudence, and the speech would not have objectively harassed or intimidated a reasonable person, nor did the speech prevent, or was it attempted to prevent, County staff from performing their jobs.  This allegation is a clear violation of the First Amendment because it equates out-of-order speech and disagreement with harassment or intimidation.

Indeed, harassing or intimidating behavior may be grounds for a civil protection order.  Chairman Omodt knows that such is a possible course of action.  He emailed his intent to file a civil protection order against David Bowman.  Please see his email attached hereto as Exhibit 10.  However, he did not include Mr. Cramer as a person against whom he said he needed a protection order. Mr. Cramer has no protection order issued against him.  No person has sought a protection order against Mr. Cramer.

**3.  The BOCC applied an unreasonable and arbitrary standard to Mr. Cramer.**

The BOCC has arbitrarily and capriciously selected Mr. Cramer for punishment.  It has not held uniform standards for disruptions or treated most other disruptions similarly.

DocuSign Envelope ID: 7528F50D-C82A-43EE-83CD-3CAADB762B11

For example, Commissioners Omodt and Bradshaw regularly disrupt the meetings by making out of order comments, and interrupting the person with the floor.  Such behavior is not punished with banishment from the public meeting, or really addressed at all by the BOCC. Attached hereto as Exhibit 18 is a spreadsheet outlining a summary of various disruptions that have occurred at County Commissioner meetings.  Mr. Cramer requests that the BOCC take judicial notice of each and every meeting they have had over the last year, as well as judicial notice of the hyperlinks on the spreadsheet and the time stamps of each interruption.

A neutral observer would note that the disruptions are more frequently done by others, and to a greater extent than any disruption by Mr. Cramer.  But he is one of two people who has been wrongly trespassed.

**4.   Omodt Lumped in Cramer with Bowman**

Truly the emperor wears no clothes, because we all know what he did.  Luke Omodt was alarmed by the email of Dave Bowman and lumped Mr. Cramer in with him wrongfully. Chairman Omodt trespassed the two of them, and unreasonably trespassed Mr. Cramer.  The BOCC then ratified the decision on March 7, 2024.  This decision was wrongful.  Unlike Mr. Bowman, who was again arrested in February, Mr. Cramer has participated remotely via zoom.

**5.   There is no lawful authority to prospectively trespass citizens from public meetings as punishment for disruptions.**

Bonner County does not have an ordinance authorizing the Chairman to trespass individuals from future County meetings.  Bonner County Code § 1-200(A) only permits the chair to remove a person for unrecognized or disruptive comments at that meeting.  No statute or ordinance authorizes commissioners from prospectively trespassing citizens.

6.   **The First Amendment Prohibits the Trespass**

Mr. Cramer is entitled to the First Amendment freedom of speech, including the symbolic speech of in-person attendance of public meetings, and participating in the limited public forum of a Bonner County Board of County Commissioners' meeting. Debate on public issues should be uninhibited, robust, and wide-open. *N.Y. Times Co. v Sullivan*, 376 US 254, 270, 84 S Ct 710, 11 L Ed2d 686 (1964).

The Ninth Circuit has emphasized, "Citizens have an enormous first amendment interest in directing speech about public issues to those who govern…." *White v. City of Norwalk,* 900 F.2d 1421, 1425 (9th Cir.1990). Mr. Cramer has a statutory right to attend public meetings pursuant to Idaho Code § 74-203(1).  Bonner County Commissioner meetings, where the public has the opportunity to address officers of a local government or local governmental agency, are limited public fora. *See e.g. White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir.1990). Bonner County may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because the public official opposes the speaker's view.  The fact remains that limitations on speech at those meetings must be reasonable and viewpoint neutral. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983).The moderator of such a meeting has "a great deal of discretion" to determine what constitutes a disruption. *White*, at 900 F.2d at 1426.  "[A]buses can occur, as when a moderator rules speech out of order simply because he disagrees with it, or because it employs words he does not like…." *Id.*

Thus, the BOCC has the authority to remove a disruptive individual from a particular meeting, on a particular occasion for an act of disruption that occurs at that meeting.  However, the BOCC

DocuSign Envelope ID: 7528F50D-C82A-43EF-83CD-2CAADB762B11

cannot remove citizens simply because it disagrees with their speech or it doesn't like their words. "Actual disruption means actual disruption. It does not mean constructive disruption, technical disruption, virtual disruption, *nunc pro tunc* disruption, or imaginary disruption." *Norse v City of Santa Cruz*, 629 F3d 966, 976 (9th Cir 2010).  Thus the BOCC cannot *nunc pro tunc* remove Mr. Cramer at a subsequent meeting for a disruption of a prior meeting.

   A *prospective* ban that targets a citizen's speech is unreasonable. If a citizen is disruptive or otherwise abusive during a public meeting, then he may be ordered to leave that meeting.  *Miller v. Heimuller*, No. 3:23-CV-293-SI, 2023 WL 3559529, at *7 (D. Or. May 18, 2023).  "[I]mposing a complete bar on [the plaintiff's] entry into the building, clearly exceeds the bounds of reasonableness clearly established by *White, Kindt*, and *Norse* as a response to a single act of disruption...." *Reza v. Pearce*, 806 F.3d 497, 504 (9th Cir. 2015). "Thus, nothing in our caselaw suggests that [defendant] could have reasonably believed that he could violate *Norse* and instead bar [plaintiff] from the building at a time when it is undisputed that he was not being disruptive…." *Id*. A prospective exclusion was found unreasonable. *Walsh v. Enge*, 154 F. Supp. 3d 1113, 1129 (D. Or. 2015).  "Undeniably, Defendants had authority to exclude Walsh **_on the day of his disruption_**." (Emphasis added). However, future exclusion from participating in city council meetings was held to be unreasonable.  *Id*.  No cases, in the Ninth Circuit or otherwise, even remotely suggest that *Norse*'s principle can be inverted to ban an individual from a government building based on a disruption of a limited public forum*. Id.*   Even drawing all reasonable inferences in the City's favor, the *Walsh* Court held that "to prospectively exclude Walsh, or any other individual, **_based on a past incident, or even several past incidents_**, of disruption is not exclusion from a given meeting for actual disruption: **_it is an impermissible_**

**_prospective exclusion for possible or assumed disruption in the future._**  (Emphasis added).

_Walsh v. Enge_, 154 F. Supp. 3d 1113, 1133 (D. Or. 2015).

The BOCC cannot lawfully assume that Mr. Cramer will be possibly disruptive in the future, and exclude him from future public meetings.  The law requires Mr. Cramer to disrupt the actual meeting he is attending before Chairman Omodt may remove him from that meeting.  The BOCC's actions are an unlawful prior restraint of Mr. Cramer's speech. The BOCC discriminates against Mr. Cramer based on viewpoint, and permits people who make threats, harass or intimidate public officials to attend meetings of the BOCC.

Additionally remote attendance at a public meeting is a constitutionally insufficient alternative channel of communication. Participation in public meetings by telephone and videoconference could not cure the First Amendment harm a plaintiff suffered through physical exclusion from a public meeting because the plaintiff was barred from in-person communication. _Miller v. Heimuller_, No. 3:23-CV-293-SI, 2023 WL 2474345, at *5 (D. Or. Mar. 13, 2023). _See also Cyr v. Addison Rutland Supervisory Union_, 60 F. Supp. 3d 536, 549 (D. Vt. 2014) (noting that regulation of a medium inevitably affects communication and that the First Amendment did not permit the public entity to confine plaintiff's speech to remote participation by issuing a blanket notice of trespass when less burdensome alternatives exist because his speech may not have had the same effect on the board or other members in attendance at board meetings as if he were physically present). Relegating Mr. Cramer to a virtual format infringed on his First Amendment right to assemble and associate with other members of the public and Commissioner Williams, and to engage in symbolic speech and actual speech.  The Supreme Court explains that in assessing a First Amendment claim for speech on government property, the Court "must identify

the nature of the forum, because the extent to which the Government may limit access depends on whether the forum is public or nonpublic." *Cornelius v. NAACP Legal Defense & Educ. Fund*, 473 U.S. 788, 797, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985).

Forum analysis divides government property into three categories: public fora, designated public fora, and nonpublic fora." *DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.*, 196 F.3d 958, 964 (9th Cir.1999). A limited public forum "refer[s] to a type of nonpublic forum that the government has intentionally opened to certain groups or to certain topics. *Hopper v. City of Pasco*, 241 F.3d 1067, 1074 (9th Cir. 2001).

Here, Bonner County has created a limited public forum 1) by passing an ordinance that permits citizens the ability to comment at business meetings; and, 2) by its practice and custom of permitting public comment at Commissioner meetings.

Bonner County Code 1-200(A) provides that "everyone may be afforded an opportunity to speak on a particular issue." This ordinance allows government property to be used for speech on the topics at hand, which creates a limited public forum. The practice of the County is to permit public comment at business meetings. Because the County has opened the floor to the public, it has created a limited public forum. Since the Commissioner meetings are limited public fora, the public does have a limited right to speak, and the BOCC cannot limit speech based on viewpoint discrimination. Additionally, business meetings are a limited public forum for the symbolic speech of in-person attendance as the meetings are open to the public pursuant to Idaho law which provides "…all meetings of a governing body of a public agency **shall** be open to the public and **all** persons **shall** be permitted to attend **any** meeting except as otherwise provided by this act." Idaho Code Section 74-203(1) (emphasis added).

Therefore, the meetings are a limited public forum where the public has a right to in-person attendance for symbolic speech, even if the Commissioners decide to close the limited public forum to public comment.  The BOCC cannot prohibit in-person attendance, pursuant to Idaho's Public Meeting law, and does not have the authority to close the limited public forum to in-person attendance and symbolic speech.

"Standards for inclusion and exclusion in a limited public forum must be unambiguous and definite. Absent objective standards, government officials may use their discretion to interpret the policy as a pretext for censorship. A generalized standard of permissible comment poses a risk of arbitrary application. Broad discretion given to officials raises the possibility of discriminatory application of the policy based on viewpoint.  Therefore, the more subjective the standard used, the more likely that the policy will not meet the requirements of the First Amendment."  *Hopper v. City of Pasco,* 241 F.3d 1067, 1077 (9th Cir. 2001) (internal citations omitted).

The BOCC's subjective standards do not meet the requirements of the First Amendment.  The BOCC cannot engage in viewpoint discrimination in a limited public forum, even if the code does say "if recognized by the chair."  Nor does "recognition by the chair" provide any objective standards sufficient to satisfy the requirements of the First Amendment when recognition is not used merely to decide the order of speakers and identify the person who has the floor, but to limit and exclude speech from specific speakers by refusing to fairly recognize them. Here, the standards used by Chairman Omodt or the BOCC were not sufficiently articulated or followed. Here, the unarticulated standards used by Chairman Omodt, and now the BOCC as a whole, to trespass select individuals for select circumstances (circumstances that are undescribed to the

public or the individuals) discriminate based on viewpoint.  The standards are arbitrary and not uniformly applied.

Of course, making an out-of-order statement, may be disruptive.  Yet, Chairman Omodt frequently makes out-of-order statements at Commissioner Meetings.  Robert's Rules of Order provide that after a member has been assigned the floor she "cannot be interrupted by a member or the chairman…" Art. 1(3)(1) Robert's Rules. Chairman Omodt habitually interrupts Commissioner William when she has the floor (as well as others) and routinely ignores proper procedure.  This behavior of speaking out-of-order is disruptive.  The conduct and practice of Commissioner meetings are to engage in viewpoint discrimination by punishing the disruptions of select individuals with banishment from public meetings for one year, while ignoring the disruptions of others.

Thus, Bonner County violated Mr. Cramer's First Amendment rights to participate in future business meetings of the BOCC.

### 7.  The Notice of Trespass is a violation of due process for adjudicating rights without a hearing.

On March 7, 2024 the Bonner County Commissioners Luke Omodt and Steve Bradshaw voted to pass a motion to trespass Mr. Cramer and sent the March 22, 2024 letter. No specific reason was given at the public meeting to trespass Mr. Cramer for one year.

Prior to the vote, Chairman Omodt observed that "Regular business meetings do not constitute public hearings wherein the public has the right to be heard."  While a correct recitation of Bonner County code, the law is more nuanced. First, the typical business meeting addresses broad executive and legislative functions of the BOCC. A regular business meeting is

not typically a "hearing" because it usually creates rules of general applicability or makes executive decisions.  But when the BOCC makes a decision that particularly affects a specific person's liberty interest, the Due Process Clause confers upon the particular person a right to be heard.

Commissioners often hold quasi-judicial hearings where they adjudicate a person's property right or liberty interest to use their land in a zoning dispute. Similarly, when the Commissioners adjudicate a particular person a safety threat, or deprive a particular person of a liberty interest to attend public meetings, they are not functioning in a legislative capacity.  In such situations, the hearings are adjudicatory, which thereby necessitate the right of the interested persons to be heard.

Due process attaches when a person shows that the deprivation occurred as a result of an adjudicatory process rather than a legislative process. *See Harris v. Cty. of Riverside*, 904 F.2d 497, 501 (9th Cir. 1990). If the matter is one in which "all are equally concerned," the matter is a legislative process and due process rights do not attach. *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445, 36 S.Ct. 141, 60 L.Ed. 372 (1915). If the matter is one in which a "relatively small number of persons [are] concerned, who [are] exceptionally affected, in each case upon individual grounds," then the process is adjudicatory and due process rights attach. *Id.* at 446, 36 S.Ct. 141; *see also Londoner v. City & Cty. of Denver*, 210 U.S. 373, 385–86, 28 S.Ct. 708, 52 L.Ed. 1103 (1908) (holding that a small number of people who were disproportionately affected by a tax were entitled to a hearing before that tax was enacted).

Thus, whether or not members of the public have the "right" to speak does not merely hinge on the language of Bonner County Code, but also hinges on the application of constitutional law to the particular circumstance before the Commissioners.

Here, the motion to trespass Mr. Cramer was an adjudicatory hearing specifically affecting Mr. Cramer, and thereby conferring upon him a due process right of notice and an opportunity to be heard.  Prior to the hearing, Mr. Cramer had requested to make a comment. His counsel was present and not provided an opportunity to speak. The Commissioners had actual knowledge of the presence of Mr. Cramer and his attorney.  Bonner County violated Mr. Cramer's due process right by refusing to permit Mr. Cramer to speak, and/or refusing to hear from his counsel.

**8.  The Notice of Trespass is an Unconstitutional Bill of Attainder.**

It is particularly troubling to have political figures adjudicate matters of First Amendment rights.  The risk of yielding to political pressure to exclude unpopular opinions from the political process is too great to trust with political figures.  If there is a genuine concern for public safety, a person, even a commissioner, can always take the conduct or threats to a Court and seek a civil protection order.  Then an impartial Judge may provide both sides an opportunity to be heard and offer evidence.  After a trial, the Court then carefully reviews the evidence and applicable law, and then fairly determines whether a threat was made, and whether it was a "true threat" outside of First Amendment protection, for which a protection order may be issued.

It is worth noting that a "true threat" is a high bar.  A "true threat" of violence is a historically unprotected category of communications. *Virginia v. Black*, 538 U. S. 343, 359 (2003). Not only must a "true threat" subject a person to both a subjective and reasonable "fear of violence," but the statement also must have been made recklessly, *i.e.* showing that the person consciously

disregarded a substantial and unjustifiable risk that his statement would be viewed as a threat. *Counterman v. Colorado*, 600 U.S. 66 (2023).

Certainly, approaching the commissioners' table and speaking out of order does not rise to a true threat or an assault.  If there is a disruption, the clearly established law permits the BOCC to remove the disruptive individual from that particular meeting.  The law does not allow the BOCC to exercise political power to banish citizens from public meetings.

A legislative act that 1) is specific to a person or persons, 2) imposes punishment on a specific individual or group, and 3) imposes that punishment without a judicial trial, is an unconstitutional Bill of Attainder.  *See. e.g. State v. Haggard,* 146 Idaho 37 (2008).

As a historical background, a Bill of Attainder was a parliamentary act punishing specific persons in sixteenth, seventeenth, and eighteenth century England.  It was a political act for dealing with persons who were perceived by parliament as attempting to challenge the prevailing faction's power or authority. *See United States v. Brown,* 381 U.S. 437 (1965), *citing e.g.*, 3 Jac. 1, c. 2; 10 & 11 Will. 3, c. 13; 13 Will. 3, c. 3; 9 Geo. 1, c. 15.

During the American Revolution, the legislatures of all thirteen States passed bills of attainder directed against the Tories (those colonists who remained loyal to the British Crown).  *Id citing* Van Tyne, The Loyalists in the American Revolution, apps. B & C (1902); Thompson, Anti-Loyalist Legislation During the American Revolution, 3 Ill.L.Rev. 81, 147; Reppy, The Spectre of Attainder in New York, 23 St. John's L.Rev. 1. *See Respublica v. Gordon*, 1 Dall. 233; *Cooper v. Telfair,* 4 Dall. 14.

The Bill of Attainder Clause was not intended as a narrow, technical prohibition, but rather as an implementation of the separation of powers, a general safeguard against legislative exercise

of the judicial function, *i.e.,* trial by legislature.  *Id* at 442.  The dangerous consequences of the

power of government to pass a Bill of Attainder are clear: "**if it may banish at discretion all those**

**whom particular circumstances render obnoxious, without hearing or trial,** no man can be safe,

nor know when he may be the innocent victim of a prevailing faction. The name of liberty applied

to such a government would be a mockery of common sense." *Id* at 444 *citing* The Federalist, No.

44, p. 351 (Hamilton ed. 1880).The Bill of Attainder Clause not only was intended as one

implementation of the general principle of the separation of power, but also reflected the

Framers' belief that a political branch is not so well suited as politically independent judges and

juries to the task of ruling upon the blameworthiness of, and levying appropriate punishment

upon, specific persons.  *Id* at 445.

Here the BOCC banished Mr. Cramer from public meetings and participation in the political

process.  The Motion did not specify the grounds for the decision but stated that specification of

the grounds would be forthcoming, and the letter's grounds were vague as previously discussed.

The failure of the County to adequately explain the facts found as the basis for the decision is

because the County is in search of facts to fit its policy, and seeking to justify the decision after

the decision was arbitrarily made.

If Bonner County Commissioners or employees actually had evidence that Mr. Cramer posed

some sort of a threat of harassment or intimidation, they could have sought a judicial

determination of such, by an impartial Court, utilizing a civil protection order proceeding.

However, resorting to a Bill of Attainder is not constitutional, and therefore an improper option.

DocuSign Envelope ID: 7528F50D-C82A-43EE-83CD-3CAADB762B11

### III.    CONCLUSION

The underlying trespass by Luke Omodt was flawed. The ratification of that on March 7, 2024 was flawed.  The notice of trespass was flawed. This process is flawed.   Acknowledge BOCC mistakes in prospectively trespassing citizens from future meetings of the BOCC.  Continuing to double down only compounds the problem.  The action to trespass Mr. Cramer was arbitrary, capricious and an abuse of discretion.  It unconstitutionally violates Mr. Cramer's constitutional rights.

For the foregoing reasons, Mr. Cramer respectfully requests that the BOCC grant the appeal, reverse the decision to Trespass Mr. Cramer and lift the trespass.

Submitted herewith are videos within the USB Disk submitted concurrently herewith as Exhibit 14.  Said videos include videos of Commissioner Meetings documenting the allegations contained in this appeal, as well as videos of the police encounter on January 23, 2024 and January 26, 2024.  Additionally, Richard Cramer requests that you take judicial notice of the appeal filed by Dave Bowman and hereby incorporates its exhibits by reference as if fully set forth herein.

Respectfully submitted this 1st day of April, 2024.

*/s/ Daniel Sheckler*
Daniel Sheckler
Attorney for Richard Cramer

DocuSign Envelope ID: 7528F50D-C82A-43EF-83CD-2CAADB762B11

## VERIFICATION AND PERSONAL STATEMENT

Mr. Cramer would like to offer the following comment:

Life isn't easy for any of us.  I think we all know how hard it is to tame our tongues.  As the good book says: Those who guard their mouths and their tongues keep themselves from calamity.  Proverbs 21:23.

I will strive to tame my tongue, wait my turn, and acknowledge my duty is to make comments when recognized by the Chair and not disrupt the meetings. Chairman, your duty is to treat me fairly, and not based on the contents of my speech or my viewpoints, and allow my equal access to public comment.  Your duty is to not retaliate against citizens for a disruption, or unreasonably punish them beyond what the Constitution permits, even though the BOCC may remove a disruptive person from a meeting.

Members of the Board, you took this too far and trespassed me from all meetings without lawful authority.  Chairman Omodt you unfairly lumped me in with Mr. Bowman. That was retaliation and discrimination for my views, and not because I pose any safety risk. This trespass has significantly affected my reputation and also limited my right to assembly, my symbolic speech and my in-person speech, and prevented me from conducting business at County buildings.  I am not a violent person and I don't pose a safety risk to any person.  I still have not had an opportunity to fully contest the trespass, and put forth evidence for why it was wrongfully issued, as I am not even allowed to be present at this appeal or to present any type of testimony, other than a written statement.  Please acknowledge that I am not a dangerous person. Acknowledge, that trespassing me was your mistake, and lift the trespass.

I declare under penalty of perjury pursuant to the laws of the state of Idaho that I have read

the foregoing and believe the factual allegations contained in this Appeal are true and correct.

Dated:   4/1/2024

*Richard Cramer*

Richard Cramer